R. M. BARTON, JR., Adm'r B. F. McFarland *et al. v.* W. H. & T. W. TURLEY.

1. CHANCERY PLEADINGS AND PRACTICE. *Appeal. Final decree.* There can be no appeal to the Supreme Court except from a final decree settling the rights of the parties.

2. SAME. *Same. Same.* The report of C. & M., with some exceptions thereto overruled, and some sustained, with directions and instructions for modification of the report, does not form the basis of such final decree settling the rights of the parties, from which an appeal can be taken.

3. SAME. *Same, Same.* The fact that no further exception could be taken successfully, cannot change the character of the report into a decree final by the court.

4. SAME. *Same. Same.* It is not that a decree must be *final* in the sense that the Chancellor cannot reverse it at a subsequent term, but that it must be *final* in the sense of being a complete settlement of the rights of the parties.

---

FROM GRAINGER.

---

Appeal from the Chancery Court at Dandridge. H. C. SMITH, Ch.

SHIELDS & SHIELDS for complainants.

JESSEE G. WALLACE for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill is filed mainly for the purpose of having an account of a series of transactions extending over several years between McFarland and W. H. Turley. These matters include the advance of money

by Turley to McFarland at various times—debts paid and assumed by him for McFarland—with transfers of debts due to McFarland to be accounted for by Turley, out of which there arises a number of questions in taking the account. The main matter litigated now before us, is the rights of the several parties to this suit, growing out of a sale of "one undivided half-interest in" what is known as the Bean's Station property, in Grainger county, together with another small tract of land adjoining it, the sale made October 20, 1873.

This last property had on it a hotel, which was intended by the parties to be opened, refitted and furnished in view of an anticipated railroad confidently expected in no great time to be completed to that point. This hotel was repaired and furnished, and kept open for seveaal years, but the railroad failing, the expectations of the parties were not realized, and so in a few years had to be abandoned. The cost probably of the repairs and furnishing the hotel property, amounted to near $3,000. W. H. Turley was nominally the owner of the other half of the property, the equitable title being in T. W. Turley, his co-defendant, to whom it was some years after the sale to McFarland, conveyed by W. H. Turley. It having been occupied by McFarland, or McFarland and W. H. Turley, and rented out afterwards by T. W. Turley, all these matters growing out of the partnership of McFarland & Turley, and joint ownership of McFarland and T. W. Turley, are involved in the account. In addition, the question of payment for the

property by McFarland, and proper mode of taking the accounts, as between W. H. Turley and himself, in the application of a fund assigned by McFarland to Turley, known as his claim against Branner's estate, growing out of cotton speculations, as the consideration for the sale of the property, the *surplus,* if any, to be appropriated to *other* liabilities of Mc-Farland to Turley, as maintained by one side, by the other, that this fund to be received from Branner's estate is to be *first* appropriated to the other liabilities, and their surplus to the Bean's Station indebtedness.

It is seen from this statement that a complicated state of accounts is to be investigated, and numerous questions decreed upon in order to the adjustment of the rights of the parties.

After several informal references were had, the decrees settling nothing, a decree was ultimately made by Judge Rose, sitting by interchange for the chancellor, in which the rights of the parties were defined, and the clerk ordered to report on this basis.

On the 26th of September, 1881, the master filed an elaborate report, in which he complied with the decree, by ascertaining what he deemed the results of the proof on each specification referred to him by the chancellor. There is, however, in this report, no summary showing the final balance or net result of itemized report, though the items as reported do furnish the elements from which such result could, with more or less readiness, be ascertained, dependent on the familiarity of the party attempting to ascertain this result with the case in hand.

Barton *v.* Turley.

To this report numerous exceptions were filed by the parties, both complainants and respondents. These came on to be heard before the chancellor, when the following decree was entered:

After reciting "that the cause came on to be heard on former reports, exceptions thereto, proofs and report of the clerk and master filed 26th October, 1881, and exceptions to the same filed jointly by complainants, and exceptions by defendants, and argument of counsel, the premises seen, and the court holds that all the exceptions on the part of complainants and R. M. Barton, Sr., and Wm. McFarland, be disallowed, and that all the exceptions on part of the other defendants be disallowed, except exception No. 4, which is sustained, and the cause recommitted to the clerk and master to restate the account, and modify his report by charging the $1,441.61, which was rejected in his report of 26th September, 1881, against the estate of McFarland, and allowing said sum as an additional charge in favor of Turley, but in all other respects the modified report will be as shown in said report of date 26th September, 1881.

The question of costs is reserved until the coming in of said report. From which decrees and orders the complainants, R. M. Barton, Jr., Adm'r, etc., and defendants, R. M. Barton, Sr., and Wm. McFarland, pray an appeal to the next term of the Supreme Court, etc., and the defendants, W. H. Turley and T. W. Turley, in like manner pray an appeal, and the court being of opinion this is a proper case for appeal to settle the equities in the Supreme Court, be-

fore the account is finally taken, said appeals are granted."

Then follows an allowance of time within which to give bonds for the appeals, and agreement that a cer- original exhibit shall be sent up with the record.

This is the entire decree, and the question is pre- sented, whether we can treat it as a final decree under the decisions of the court, so as to hear and dispose of the case on the merits. The Referees have re- ported it is not such, to which exceptions are filed, and the question must be decided. Inasmuch as coun- sel on both sides seem anxious to have the case set- tled, we have no disposition to apply the rule with strictness beyond the imperative requirements of our law, and a reasonably consistent regard to our decis- ions shall require.

The case is simply a report, with the exceptions overruled, except one, which is sustained, and direc- tions given as to the application of the credit of $1,441.61, so that when this modification is made, and the result ascertained and made part of the report, we should have a report before us, not subject to further exception, on which a decree could be made, but the question is, can we by any consistent reason- ing reach the conclusion that a report, however com- plete, with nothing affirmatively decreed on it by the court as resulting from the report, is a final decree in the sense, letter or spirit of our law?

The fact that no further exception could be taken successfully, cannot change the character of the report into a decree final by the court. It is still but a

report made in pursuance of an interlocutory decree. Suppose all exceptions filed had been withdrawn, and a decree entered to that effect, would this decree be a final one? Could an appeal be prosecuted to test the rights of the parties, and whether the interlocutory decrees and orders under which it was made were proper dispositions of their equities? Can a report, with exceptions overruled, stand higher, as a final de_ cree, than one unexcepted to, or exceptions withdrawn, where there is no affirmative action of the chancellor ascertaining the result of the facts thus shown, with a decree adjusting the equities and decreeing the rights of the parties on the basis of the facts thus standing, as proven before him?

The case of *Meek et al.* v. *Mathis*, 1 Heis., 335–6, *et seq.*, is supposed to hold a doctrine that makes the decree before us a final one from which an appeal will lie. But on carefully looking to that case it will be found precisely the opposite of this view. The head-note accurately states what was held in the first opinion, which is, " that the decree in that case giving a recovery of the amount due upon the footing of a note on file in the case, with a reference to as- certain the amount, is so far final *that* it cannot be disregarded by the chancellor of his own motion, or otherwise than by a bill of review *after* the term at which it was entered."

This is all clear. The use of the term *final* is not strictly appropriate, nor necessary to express the idea intended by the learned Chief Justice. It is not that the decree must be *final* in any sense in order

to be beyond the power of change by the chancellor after the term at which it was rendered, but that being a complete decree settling rights, it could not for this cause be disturbed by the chancellor. In other words, he could not reverse his own decree at a subsequent term.

But in a subsequent opinion in the same case, on motion of complainants in a cross-bill for a writ of error, in order to reverse the decree discussed in the former opinion, the Chief Justice expressly held that the decree referred to was not final in the sense of being such a decree as could have been appealed from as a matter of right, or that a writ of error could be prosecuted on.

The question on the motion for writ of error was sharply made—for if the decree referred to, made September, 1868, was final in this sense, then the application came too late, but if the subsequent decree was the final decree, made on coming in of the report ordered, it was in time.

His Honor on this question definitely held the parties could not have appealed of right from the decree of 1868, but only at the discretion of the chancellor, and that the decree made in March, 1869, when the report of the master was acted on, and in pursuance of it, was the final decree, and on this ground the writ of error was allowed; so there is nothing in this case that will enable us to hold the present decree final, but the contrary.

For these reasons, as well as others that might be given, we are compelled to hold this decree is not a

final decree, such as could be appealed from in the state of this record, and remand the case to be proceeded to a final decree. The costs of this court will be divided, as both parties have appealed.