BOYD *v.* SIMS.

(*Jackson.* June 6, 1889.)

1. CHANCERY PLEADING AND PRACTICE. *Decree overruling demurrer conclusive on Chancellor.*

Decree overruling demurrer to a bill cannot be reconsidered or reversed by the Chancellor, after answer has been filed and proofs taken, at the hearing at a subsequent term upon the merits.

(See Code (M. & V.) §§ 5062, 5063, and notes.)

2. CORPORATIONS. *Suit by stockholders for redress of grievances.*

Before suit for redress of grievances will be entertained on behalf of stockholders against the corporation, its directors, or officers, the stockholders must have exhausted all the means within their reach to obtain redress within the corporation itself, and must aver that fact.

Cases cited and approved: 104 U. S., 450; 110 U. S., 209.

3. SAME. *Same.*

The fact that the defaulting directors or officers of the corporation have a pecuniary interest adverse to that of the complaining stockholders, if averred, does not excuse the failure to aver a proper effort by the stockholders to obtain redress of the corporate authorities.

Cases cited: Deadrick *v.* Wilson, 8 Bax., 131.

4. SAME. *Same.*

Stockholders cannot maintain suit against a third party for damages caused to the corporation by his misconduct, unless they have first requested the corporation to sue and it has refused to do so.

Cases cited and approved: 104 U. S., 482; 9 Heis., 314.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

MALONE & MALONE and L. & E. LEHMAN for Complainants.

POSTON & POSTON for Respondents.

SNODGRASS, J.   Complainants, holders of a minority of the stock of the Arlington Insurance Company, of Memphis, filed this bill against Sims and Kennedy, the President and Secretary of that company, as well as of the Citizens' Insurance Company, the two companies named, and other defendants, stockholders and Directors of the Citizens' Insurance Company, some of whom are also Directors of the Arlington Insurance Company, though they are not alleged to be, and do not in fact constitute, a majority of the Board of Directors of that company.

The bill alleged the incorporation of the Arlington in 1883, and the subsequent incorporation of the Citizens', a rival company, in 1886; that the President and Secretary of the first had been made President and Secretary of the second company; and that five of the Directors of the former were Directors in the latter—had, with two others, organized the latter company as original incorporators. It showed that the latter, though a rival company, had taken possession of the office of the Arlington, on payment of alleged inadequate rent; had taken business from it improperly and on inequitable terms; had obtained the benefit of its funds applied to the salaries of officers, by securing them at

lower terms than they could have been obtained if the Arlington had not paid them higher salaries for like service in the same office; and made a *prima facie* case of gross misconduct in the management complained of, against which it sought an injunction as well as an account for damages sustained by the contract and operation of the Citizens' Company.

The bill alleged that complainants "have repeatedly protested to the *said defendants* against this course of business, pointing out its inconsistencies; * * * but, being imbued with the spirit of rule or ruin, the protests have been disregarded."

The bill does not allege any direct application to even the officers, much less the Directors of the company, to correct the evils complained of. It does not pretend that a majority of the Directors of the Arlington Company have any official connection with the Citizens' Company, and shows no sufficient effort, nor indeed any effort, to have the majority of the Board of Directors of the Arlington redress the grievances complained of within the company, or to bring any suit for the relief desired against the other company. Both companies demurred, and assigned as grounds of demurrer the failure of complainants to aver such effort and demand, with refusal or failure to comply on the part of the Arlington Company through its Directors.

The demurrers were overruled, answers filed,

proof taken, and the cause brought to trial on the merits.

The Chancellor, on this hearing, concluded he was in error in overruling the demurrer, and reversed his former action and dismissed the bill.

We are of opinion that the Chancellor, in assuming the right to redetermine the question on the demurrer, was in error. If a demurrer is overruled, without leave to rely on it in the answer, as was this, so far as the question involved in it is concerned, it should be treated by the Chancellor as settled, and the cause heard and decided on the merits as prepared for hearing by the parties; and even where leave has been given to rely on a demurrer in answer, it is error to act on it on final hearing, the advantage of it being lost and the demurrer waived, unless it is disposed of before the cause is heard on the merits. This has been so often determined it is not necessary to refer to cases. We only notice this question here, however, to settle it and avoid its recurrence in practice, because, so far as this cause is concerned, the effect is of no practical consequence, inasmuch as on appeal the original action on demurer is before us for review; and as we hold the decree overruling it to be erroneous, the result is the same. It would not be the same, however, in cases where we affirmed such a decree, which the Chancellor had subsequently reversed, for in that event the record here would

present no other—no final decree on the merits for review.

When parties, after a demurrer is finally over-ruled, have put their cause at issue, and gone to the trouble and expense of taking the proof necessary to present the merits of the controversy for determination, they are entitled to have it so determined, and such decree submitted to this Court for review with all others, on demurrer or otherwise, which are open to revision on appeal.

Having stated that the demurrer in this case was well taken, it is not deemed necessary to go into any thing like an elaborate discussion of the question presented in the demurrer. It is one of obviously correct solution. A corporation acts as a body. All stockholders in it submit the control of their interests to it as such, through its Trustees or Directors. In the event its officers so use the powers conferred upon them as, in the judgment of stockholders, to injure the corporation, they can demand of the power which they have constituted to do so—the Directors or Trustees—to put a stop to the abuses complained of. This calls upon them to exercise the judgment they are expected to exercise to determine the propriety of the acts objected to. If they think the acts proper, and approve them, or refuse or fail to take any action, the stockholders, if a majority, may themselves take such action as is necessary to correct the abuses by change of Directors and officers or otherwise, including, of course, an appeal to the Courts; if

a minority, by suit to compel the proper discharge of trusts and official duties. But it is clear that no stockholders should be permitted to interfere and control the management or frustrate the purposes of the corporation merely upon an allegation of the existence of a state of affairs contrary to their judgment of propriety, without any effort to have it changed in the mode indicated. Any other view would be destructive of the purposes for which corporations are formed, and of the principle of corporate action and management. It would make them hot-houses of litigation, and leave the valuable franchises held by them at the mercy of the misjudgment, passion, or speculative propensities of individual stockholders, while the rule announced neither permits abuses in this or the opposite direction. It does not prevent suits for abuse of trust or mismanagement. It only requires that stockholders proceed in that lawful and orderly way for the correction of abuses within the corporation which they have engaged to do on becoming shareholders in it, which its existence and interest require they shall do—to reform alleged abuses before involving the corporation and other shareholders therein in litigation; but it equally provides that when they have done this, and found themselves unable to obtain relief to which they are entitled, it will be given them by the Courts.

This rule is not only sound in reason, but unquestioned in authority.

*Hawes* v. *Oakland*, 104 U. S., 450; *Dimpfel* v. *Railroad Company*, 110 U. S., 209.

It is argued, however, that because of the allegation quoted that complainants have repeatedly protested against the evils complained of, the rule should not be applied in this case. We need not say that such a construction would destroy it, and that if mere complaint or protest—not even averred to have been made to the Directors as a body, or to the majority of them—unaccompanied by any specific effort, addressed to parties authorized to afford it, to obtain redress, would justify a suit, then the only attitude in which one need stand to sue the corporation for mismanagement would be that of a complaining stockholder.

The objection to suit by its stockholders against the Arlington, for the reasons stated, applies with more force to the suit by stockholders of the Arlington against the Citizens' Company. Whatever injury the latter company has done was done the former company, as such, and not the individual stockholders complaining. Of course these cannot maintain a suit against the Citizens' Insurance Company for alleged injury to the Arlington without this latter corporation has been asked to sue, and refused or failed to do so.

*Huntington* v. *Palmer*, 104 U. S., 482; *Gas Company* v. *Williamson*, 9 Heis., 314, 338–9.

If this were not the rule a corporation might be sued by any or every stockholder of another

who considered that the latter was aggrieved by the acts of the former.

But it is said that because it is alleged in the bill that "all or nearly all of the Directors in the Arlington (except complainant ·Boyd) were much more largely interested in the Citizens' Insurance Company than in the Arlington," this case is brought within the exception established by some of the cases to the effect that a demand of the agents of a corporation in whom authority to bring and direct its litigation is vested, is not necessary, if these agents are themselves guilty of the wrongs complained of against the corporation; that it would be contrary to justice to permit the authors of the wrong to conduct the litigation against themselves, as agents of the injured party. 1 Mor. on Corp., § 242, citing *Deaderick* v. *Wilson*, 8 Bax., 131–2, and other cases.

The reference to the 8th Baxter case is to a discussion rather than a decision, for this point did not go to judgment there, but conceding the exception to be sound, the facts alleged do not bring this case within it.

Here the majority of the Directors of the Arlington were not Directors of the Citizens', and were not alleged to be. They are not, then, the body doing the wrong, or the agents and authors thereof.

The bill can be given no greater effect than as showing that the minority of the Directors of the Arlington are Directors of the Citizens' Insurance

Company, and that others of these Directors are more largely interested in the latter than in the former company, but it does not follow from this fact that they would, upon demand, refuse to discharge their duties as Directors in the reformation of abuses and the bringing of necessary suits, unless it is upon the assumption that men will never discharge duties inconsistent with their pecuniary interests, an extent to which we cannot go, and to which no doctrine has ever been carried but that of total depravity.

It must be inferred, then, in the absence of demand and refusal by them, that the Directors composing the Arlington Board, a majority of whom are not Directors in the Citizens' would, if called upon, bring any suits against the other corporation necessary to right the wrongs of the one whose Directors they are, and this though they, or some of them, may have stock in the Citizens' Company equaling or in excess of that which they hold in the company of which they are Directors.

It follows that the bill should have been dismissed, and it is so ordered.

On the question of costs in the Chancery Court, it is assigned as error that the Chancellor decreed the costs of preparing certain exhibits filed by respondents, and the stenographer's fees for taking same, against the complainants. The record shows the Chancellor did not do this, although he was of the opinion that such was the effect of the decree for costs; and this opinion he expressed in

the order refusing to tax these items specially. We cannot correct the opinion of the Chancellor, even if erroneous, unless it is decreed. The decree does not adjudge this question, and it is not before us.