MAURY COUNTY TRUST CO. *et al. v.* CONSOLIDATED PHOSPHATE CO. *et al.*

(*Nashville*, December Term, 1941.)

Opinion filed June 2, 1942.

TRABUE, DICKINSON & TRABUE, of Nashville, and J. SHELBY COFFEY, JR., and THOS. H. PEEBLES, both of Columbia, for appellant.

ARMISTEAD, WALLER, DAVIS & LANSDEN and J. P. DAVIS, all of Nashville, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The original bill in this cause was filed for the purpose of foreclosing a deed of trust on lands located in several counties in Middle Tennessee.

On April 5, 1940, J. Shelby Coffey, one of the solicitors in the cause, filed an intervening petition in which he asked the chancellor to fix his compensation for services rendered the complainant trustee to date. The trustee demurred to the petition upon the ground that the chancellor had fixed the basis for computing the compensation of solicitors representing the trustee in his decree of November 1, 1938, and that he was without authority to revise same at a subsequent term. The chancellor sustained the demurrer and dismissed the petition. From that decree complainant has appealed and assigned the action of the chancellor in dismissing his petition for error.

The sole question before us is whether an interlocutory decree which adjudges rights and settles principles can be revised at a subsequent term.

On July 1, 1911, defendant, Consolidated Phosphate Company, executed a deed of trust to complainant, Maury County Trust Company, Trustee, to secure a bond issue of $100,000. This instrument contained the following provision:

"The Trustee . . . shall be entitled to be reimbursed for proper outlay of any sort, or nature by it made, or incurred in the discharge of its trust, and for

attorneys' fees which may be incurred, whether at the private sale by the Trustee, or by a proceeding of foreclosure in the Court.''

The Consolidated Phosphate Company defaulted in the payment of these bonds, so that, on April 13, 1926, the complainant trustee filed the original bill herein for the purpose of having the deed of trust foreclosed.

The bill was drawn and filed by Solicitor George T. Hughes, Sr., who died a short time thereafter. George T. Hughes, Jr., then became the representative of the trustee until his death in 1929. Petitioner Coffey was then employed by the trustee and served as its sole solicitor until 1937, when Pride Tomlinson, Hugh Lee Webster and Sam Holding were also retained as counsel, the four solicitors acting together in the preparation and trial of the cause on November 1, 1938.

On September 26, 1938, Coffey filed an intervening petition in the cause setting forth in detail the services rendered the trustee, which he alleged were worth $7,500, and asked the court to direct the trustee to pay that sum to him as an advancement out of the funds in its hands.

On October 4, 1938, the trustee filed its answer to said petition, in which it denied that petitioner was entitled to the sum claimed, and averred that such a fee would be unreasonable and grossly exorbitant.

The cause, as heretofore stated, came on for final hearing on November 1, 1938. The decree recites that the cause was heard ''after due notice to all parties . . . or their counsel.'' The decree covers fifty-one typewritten pages and no exception was taken thereto by any of the parties who have any present interest in the cause. The main features of the decree are (1) finding the bonded indebtedness to be $207,386.06 and rendering judgments thereon; (2) declaring same a lien

on the tracts of land covered by the deed of trust and describing them; (3) fixing the compensation of the trustee and the basis upon which to calculate the compensation of its solicitors; (4) ordering the lands sold; and (5) providing how the funds derived from the sale should be applied.

With respect to solicitors' fees the decree provided, in part, as follows:

"That the said Maury County Trust Company, as Trustee, shall have and recover of the defendant, Consolidated Phosphate Company, for all services rendered by its attorneys or solicitors in this cause, as their reasonable aggregate or joint fee, an amount equal to ten (10%) per cent of the first $10,000.00 of the amount of the aggregate judgments hereinabove rendered in favor of those bondholders who held their bonds outright and not by way of pledge, or $125,975.16, or $1,000.00; eight (8%) per cent on the next $50,000.00 of said aggregate or total amount of said judgments, or $4,000.00; six (6%) per cent on the next $50,000.00 of said aggregate or total amount of said judgments, or $3,000.00; and four (4%) per cent of the remaining balance of the aggregate or total amount of said judgments, said balance being $15,-975.16, or $639.00, or an entire grand total of $8639.34, which amount the Court finds and adjudges to be a reasonable or joint aggregate fee for all of the attorneys or solicitors of the Maury County Trust Company, Trustee, for their services rendered in this cause not heretofore compensated for; the said attorneys and solicitors for the said Trustee being and having been J. Shelby Coffey, Sam Holding, Hugh Lee Webster, Pride Tomlinson, George T. Hughes, Jr., now deceased, and who is represented in this cause by his Executrix, Mrs. Bessie D. Hughes, who has filed a petition herein for

compensation to him. The Court further finds and decrees that George T. Hughes, Sr., now deceased, was the only other solicitor or attorney who ever represented the Trustee in this cause other than the five above named attorneys; and that he has been fully paid for the services rendered by him during his lifetime; is entitled to no further fee or compensation, and the Executor of his will shall not share in the aforesaid allowance of, or judgment for, solicitors' or attorneys' fees. That the Maury County Trust Company, Trustee, having assented and agreed in open Court, it is further ordered that the said aggregate or total fee, or so much as may be realized on this cause, shall be paid from the proceeds of sale or sales of the mortgaged property or the property covered by the deed of trust or trust indenture of the Maury County Trust Company, Trustee, direct to the aforesaid four living attorneys, to wit: Messrs. Coffey, Holding, Webster and Tomlinson, and to the aforesaid Executrix of the will of George T. Hughes, Jr., deceased, in such several amounts as the said four living attorneys and the Executrix of the will of George T. Hughes, Jr., deceased, or her attorney of record in this cause, Mr. Hugh T. Shelton, shall agree to in writing filed with the Clerk and Master of this Court in this cause and if no such written agreement or division of the said aggregate fee be so signed and filed with the Clerk and Master of this Court in this cause prior to the time any payment is due to be made to said four attorneys and said Executrix, then, in that event, the Court, upon application of any one or more of the aforesaid living attorneys and/or the said Executrix or her attorney of record, will determine and decree the respective amounts or divisions of said aggregate fee that shall be made and paid direct and separately to the said four living attorneys and to

the said Executrix and the Court reserves the right so to do and to modify and amend this judgment by rendering separate judgments directly in favor of the said four living attorneys and the said Executrix in an aggregate amount equaling the aforesaid joint fee allowed.''

The decree further provided that the sum of $8,639.34 should be the maximum fee for solicitors, but that in the event the lands did not bring enough to satisfy the decrees in favor of the bondholders in full that the fees of solicitors should be reduced proportionately. The lands did not bring anything like enough to pay the bondholders, the result being that solicitors, instead of receiving $8,639.34, only received $2,527.00. Of this sum $838.16 was apportioned to Coffey, which, in all probability, does not sufficiently compensate him for the services rendered; but we think he is bound by the decree of November 1, 1938, since the chancellor had no authority to revise that decree at a subsequent term. The solicitors likely used bad judgment in fixing the basis upon which they were to be compensated, but, having freely and voluntarily entered into the plan, they will have to abide the result.

In 21 C. J., 704, it is said: ''Under the English chancery practice a decree, although interlocutory in character, passed beyond the summary control of the court upon its enrollment, and this rule has been applied to some extent in this country after the American equivalent of enrollment has taken place; but the generally prevailing American rule is as above stated, an interlocutory decree not being regarded as an enrolled decree, although the term at which it was rendered has elapsed, but as the equivalent of an English decree when entered in the registers' book but not yet enrolled. Some confusion in applying the American rule has arisen from the difficulty of determining the precise line of demarca-

tion between an interlocutory and a final decree, and the instances are not infrequent where decrees, although interlocutory in form and thus technically still under the control of the court until final decree, are yet considered as final in their determination of substantial rights, and thus are treated as final as far as modification or vacation is concerned, so that they will not be disturbed after the expiration of the term at which they are rendered." See, also, 30 C. J. S., Equity, sec. 624.

This court is fully committed to the rule that an interlocutory decree which adjudges rights or settles principles is not subject to revision at a subsequent term. This is true even though such a decree is not final so that an appeal will lie therefrom. It is this distinction that has caused confusion.

In *Meek* v. *Mathis*, 48 Tenn. (1 Heisk.), 534, 537, the chancellor decreed liability against the defendant for the balance due on a portable sawmill, but referred the matter to the master to hear proof and report as to the amount unpaid. In holding that this decree could not be revised at a subsequent term, the court said:

"Upon these authorities, we are constrained to hold, that the decree of September 10th, 1868, was final. All the facts and circumstances material and necessary to a complete explanation of the matter in litigation, were before the Court; and upon these facts and circumstances, the rights of the parties were determined. The costs of the case were disposed of, and nothing left but to ascertain the exact amount of the balance due to complainants in the cross bill, which was merely a matter of clerical calculation. The ascertainment of this balance by the master rendered no other decree necessary, except the final judgment awarding execution. As soon as it was ascertained and confirmed by the Court, it became

the amount for which a decree had already been made. The decree was, therefore, final, and could not be examined by the Chancellor at a subsequent term, and cannot be examined here, as it was not appealed from, and is not here by writ of error.''

In *Barton* v. *Turley*, 79 Tenn. (11 Lea), 600, 605, 606, it was said:

"The case of *Meek et al.* v. *Mathis*, 1 Heisk., 534, 535, 536 et seq., is supposed to hold a doctrine that makes the decree before us a final one from which an appeal will lie. But on carefully looking to that case it will be found precisely the opposite of this view. The head-note accurately states what was held in the first opinion, which is, 'that the decree in that case giving a recovery of the amount due upon the footing of a note on file in the case, with a reference to ascertain the amount, is so far final *that* it cannot be disregarded by the chancellor of his own motion, or otherwise than by a bill of review *after* the term at which it was entered.'

"This is all clear. The use of the term *final* is not strictly appropriate, nor necessary to express the idea intended by the learned Chief Justice. It is not that the decree must be *final* in any sense in order to be beyond the power of change by the chancellor after the term at which it was rendered, but that being a complete decree settling rights, it could not for this cause be disturbed by the chancellor. In other words, he could not reverse his own decree at a subsequent term.''

In *Allen and Hill, Ex'rs,* v. *Shanks*, 90 Tenn., 359, 378, 16 S. W., 715, 719, the chancellor held that the decree confirming the report of settlement of executors, and of debts, pronounced at a preceding term was interlocutory, and therefore subject to revision upon final hearing, and being "erroneous and improvident" was vacated. This

court, speaking through Judge LURTON, held this to be error, and said: "Every decree which is not final may, in some sense, be said to be interlocutory. Yet, where an interlocutory decree adjudges rights and settles principles, it is not subject to revision at a subsequent term."

We quote from *Citizens' Bank & Trust Co.* v. *Bayles,* 153 Tenn., 40, 50, 51, 281 S. W., 932, 935, as follows:

"While the line between interlocutory decrees, subject to be revised at a subsequent term, and those not subject to such reconsideration, cannot be scientifically defined, yet it may be stated as the general rule that, if such interlocutory decree settles a principle, or adjudges a right, or determines an issue, then, in such case, it is not open for revision at a subsequent term. *Allen* v. *Shanks,* 90 Tenn., 359, 16 S. W., 715; *Boyd* v. *Sims,* 87 Tenn., 771, 11 S. W., 948; *Johnston* v. *Hanner,* 70 Tenn. (2 Lea), 8; *Meek* v. *Mathis,* 48 Tenn. (1 Heisk.), 534; *Vaccaro* v. *Cicalla,* 89 Tenn., 63, 14 S. W., 43.

"If, however, it be a mere order adjudging no issue— as an order concerning the preparation of the cause, or an order granting an injunction, or dissolving or modifying one—such orders are subject to revision and reconsideration at the subsequent term, for they are in no sense an adjudication of rights. *Allen* v. *Shanks, supra.*

"These decisions are justified under section 4699 of Shannon's Annotated Code, which is as follows:

" 'A judgment or decree may be interlocutory or final to be determined by the subject-matter and substantial purport thereof.'

"In other words, all interlocutory decrees which determine an issue shall be treated as final and not subject to review at a subsequent term.

"In the instant cause, proof was taken upon the plea in abatement, and the issue decided adversely to the defendant. The decree was final as far as that issue was concerned, and the chancellor was without authority to reconsider it as a subsequent term."

That case was later approved in *Mayor, etc., of Morristown* v. *Love,* 160 Tenn., 177, 22 S. W. (2d), 769, and again in *Battle* v. *National Life & Accident Ins. Co.,* 178 Tenn., 283, 157 S. W. (2d), 817. In this latter case suits were instituted to recover damages for breach of contracts. The court found that the defendant had breached its contracts, but referred the cases to the clerk to report as to the total amount of premiums paid by plaintiffs to defendant, and what amounts defendant had paid plaintiffs under the disability or other provisions of the policies. It was held that these judgments could not be revised by the trial court at a subsequent term.

In the instant cause the chancellor decreed the basis upon which compensation for solicitors was to be computed. That was the determination of a right, an issue, or a principle, so that, after a sale of the lands, the ascertainment of the fees due solicitors was merely a matter of clerical calculation.

There is no error in the decree of the chancellor and it will be affirmed with costs.