WATTS *et ux. v.* ROBERTS *et al.*

(*Knoxville*, September Term, 1947.)

Opinion filed 29, 1947.

314

H. W. Schoolfield and J. F. Wheless, both of Chattanooga, for appellants.

J. F. Atchley, of Chattanooga, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

The original bill presents a controversy over the west boundary line of a city lot belonging to defendants, and involves a street frontage of 18 inches of land. Considering this 18 inches as the base of a triangle, the apex is the southeast corner of a garage building on the property of complainant Watts, which is contiguous to the property of defendants, lying west of it. If the line of the wall of this garage be prolonged as complainant Watts, to establish his line, insists it should be, Watts will get the 18 inches of frontage. On the contrary, defendants insist that the boundary is to be established by prolonging the east line of an old stone wall which commences at the southeast corner of the garage and runs a little more than half-way to the street, but does not exactly prolong the line of the garage wall. It runs enough more to the west to make the difference of 18 inches on the street front.

On June 6, 1945, the Chancellor entered what was termed a "final decree," in which he established the disputed boundary as follows: "Beginning at the northwest

corner of the Roberts' lot and continuing southwardly in a straight line along the east end of the Watt's garage, along the old rock wall constructed several years ago by Roberts for Watts, to the road; *thus establishing the line where the old rock wall is located and would be located if the said rock wall extended southwardly on a straight line to the road."* (Emphasis ours.)

On June 27, 1945, a petition to rehear was filed by complainants, and on August 4, 1945, a decree was entered denying the petition to rehear but appointing one Hayden Morgan, to set an iron stake in the street line in accordance with the Chancellor's decree of June 6, 1945, and ". . . he will make a written report of his work, stating where he has set the said posts, and fixed the said Southwest corner of defendants' lot."

Morgan refused to act, and nothing further was done until Watts made a motion on February 7, 1946, to appoint a surveyor to fix a line in accordance with the decree of June 6, 1945. This motion was granted and a decree was entered on February 20, 1946, appointing surveyors. To this decree defendants excepted and prayed an appeal on the ground that the decree of June 6 had been final and the Court had no further jurisdiction of the cause.

The surveyors appointed by the Chancellor filed their report with a blue print, showing the boundary line both as defendant Roberts had contended it should be and as they construed the decree of June 6, 1945. The surveyors had driven an iron stake in the street line to give Watts the 18 inches of front footage which was in controversy and explained in their written report that this was in accord with the decree of June 6, 1945.

The defendants consulted the county surveyor, who inspected the boundary line in controversy and filed an affi-

davit stating that by a proper construction of the language of the decree of June 6, 1945, the Chancellor had given the controverted 18 inches of frontage to the defendants.

The defendants filed exceptions to the surveyor's report and upon motion to dispose of these exceptions and after consideration of the report and blue print of the surveyors appointed by the Court and of the counter affidavits filed by defendants' attorney and the county surveyor, the Chancellor overruled the exceptions and approved the report of the surveyors appointed by himself and entered a decree to that effect on April 15, 1946. Undoubtedly, the Chancellor was the best judge of what he meant by the language of the June decree.

Although defendants excepted and prayed an appeal, the appeal was not perfected in time and the Court of Appeals allowed the filing of the technical record for writ of error and so considered the cause.

The Court found that the decree of June 6, 1945, was a final decree, which was suspended by the petition to rehear but reinstated on August 4, 1945, when the petition was denied; and that accordingly the subsequent decrees and proceedings were "void and of no effect."

The complainants filed petition for *certiorari* which we granted and have heard argument.

█ The determinative question is whether the decree of June 6, 1945, continued as a final decree after the entry of the decree on the petition to rehear on August 4, 1945. Though the Chancellor in terms denied a rehearing of the matters incorporated in the June decree, by appointing a surveyor and *requiring him to report back* to the Court, he obviously reopened the cause to exceptions and a further decree which would be a final determination of the proper construction of the June decree. From his action

in appointing a surveyor to fix the boundary, we are forced to infer that the Chancellor himself recognized that the part of the decree of June 6, 1945, quoted above, was not entirely clear and definite, and more important that it was not a final adjudication of the rights of the parties on the issues raised by the bill.

The entire dispute between the parties was whether the line ran down the center line of the "old rock wall" or whether, as Watts contended, the wall was entirely on his property and the line ran along the western edge. The language of the June decree, "thus establishing the line where the old rock wall is located and would be located if the said rock wall extended southwardly on a straight line to the road", leaves that basic issue of the controversy still unsettled. A final adjudication of the exact location of the boundary line was not made until the decree of April 15, 1946. "While the line between interlocutory decrees, subject to be revised at a subsequent term, and those not subject to such reconsideration, cannot be scientifically defined, yet it may be stated as the general rule that, if such interlocutory decree settles a principle, or adjudges a right or determines an issue, then in such case, it is not open for revision at a subsequent term." *Citizens' Bank & Trust Co.* v. *Bayles*, 153 Tenn. 40, 50, 51, 281 S. W. 932, 935. *Allen* v. *Shanks*, 90 Tenn. 359, 16 S. W. 715; *Boyd* v. *Sims*, 87 Tenn. 771, 11 S. W. 948; *Johnston* v. *Hanner*, 70 Tenn. 8; *Meek* v. *Mathis*, 48 Tenn. 534; *Vaccaro* v. *Cicalla*, 89 Tenn. 63, 14 S. W. 43.

This statement was approved in *Mayor, etc., of Morristown* v. *Love*, 160 Tenn. 177, 22 S. W. (2d) 769, and in *Battle* v. *Nat Life & Acc. Ins. Co.*, 178 Tenn. 283, 286, 157 S. W. (2d) 817.

We are also aware of those decisions that hold that though a decree may be interlocutory, so that no appeal

lies from it, that the Chancellor may not himself reverse such a decree at a subsequent term. *Maury County Trust Co.* v. *Consolidated Phosphate Co.*, 179 Tenn. 8, 14, 162 S. W. (2d) 397, 169 A. L. R. 116; *Allen* v. *Shanks, supra; Barton* v. *Turley,* 79 Tenn. 600, 605; *Meek* v. *Mathis, supra.*

■ From the foregoing authorities, the factor which determines the Chancellor's right to revise at a subsequent term seems to be not that the decree is final or interlocutory, but that by the decree the Chancellor has ''adjudicated rights and settled principles'' (*Maury County Trust Co.* v. *Consolidated Phosphate Co., supra,* 179 Tenn. at page 14, 162 S. W. (2d) at 399, 169 A. L. R. 116), and this element of the ''subject matter and substantial purport'' (Code 8829) limits the Chancellor's control over the lawsuit.

■ If by the decree of June 6, 1945, the Chancellor had fixed the boundary in favor of complainant, he was without jurisdiction to change his decision and fix it in favor of defendants in April 1946. But that is not the case before us. By the June decree, the Chancellor intended to decide the case in favor of complainant. Upon consideration of the petition to rehear, he realized that his decision was not clear to the parties. By appointing first Hayden Morgan and then surveyors with power to act, he undertook to clarify and make certain the June decree and this was finally done by the decree entered April 15, 1946. Such practice was fully supported by *Meek* v. *Mathis,* 48 Tenn. 534, where a reference was ordered to clarify and carry out the decree. *Meek* v. *Mathis, supra,* has been approved in many later opinions of this Court. *Cf. Maury County Trust Co.* v. *Consolidated Phosphate Co.,* 179 Tenn. 14, 162 S. W. (2d) 397, 169 A. L. R. 116; *Battle* v. *Nat. Life & Acc. Ins. Co., supra.*

For the reasons stated, we think the judgment of the Court of Appeals must be reversed and the Chancellor's decree of April 15, 1946, affirmed.

NEIL, C. J., and PREWITT & TOMLINSON, J. J., concur.

BURNETT, J., not participating.