BRISCO ROBINSON v. L-CART, INC., a Corporation
and Melvin Malone and Butler Malone.

HELEN ROBINSON v. L-CART, INC., a Corporation
and Melvin Malone and Butler Malone.

KAREN BOLES b/n/f v. L-CART, INC., a Corporation
and Melvin Malone and Butler Malone.—390 S.W.(2d)
689.

Middle Section. August 21, 1964.

Certiorari Denied by Supreme Court March 1, 1965.

300

McAllen Foutch, George LaFevre, Smithville, for plaintiffs-appellant.

Wesley Flatt, Sr.. Wesley Flatt, Jr., Cookeville, for L-Cart, Inc.

Jared Maddux, C. A. Cameron, Cookeville, for Malones.

I

—THE CASES—

SHRIVER, J. These three cases were brought in the Circuit Court of Putnam County to recover for personal injuries resulting from a gas explosion in a Belvedere Mobile Home manufactured by L-Cart, Inc. and sold to the plaintiffs, Brisco Robinson and Helen Robinson, by the defendants, Melvin Malone and Butler Malone, doing business as Cookeville Trailer Park and Sales Co. Summons was issued on January 7, 1961 and served on Melvin Malone and Butler Malone individually and as agents for L-Cart, Inc., a foreign corporation with its principal office in Elkhart, Indiana.

L-Cart, Inc., pleaded in abatement to the suits on the grounds that, it was a non-resident of the State of Tennessee, not doing business in the State at the time, and that it had no agent in Tennessee upon whom process could be served.

Plaintiffs joined issue on these pleas and proof was introduced and a hearing had before the Court on April 11, 1961. After hearing proof, the Court overruled the plea in abatement and ordered the parties to make further defense after declarations were filed.

On April 20, 1961, defendant, L-Cart, Inc., filed a motion for a new trial on its plea in abatement and the Court overruled said motion and allowed said defendant to preserve a Wayside Bill of Exceptions which was duly filed on April 29, 1961.

Thereafter, on August 22, 1961, L-Cart, Inc. filed a plea of not guilty and Melvin Malone and Butler Malone, d/b/s, etc. filed a like plea on September 29, 1961.

There was a trial of the cases on their merits before a jury and at the conclusion of plaintiffs proof on March 28, 1963, approximately 23 months after the Court had overruled the motion for a new trial on the plea in abatement, defendant, L-Cart, Inc., moved the Court to reconsider its action on the plea in abatement, whereupon, the Court sustained the plea in abatement and dismissed plaintiffs' suits against L-Cart, Inc.

Also at the conclusion of plaintiffs proof on March 28, 1963 defendants Butler Malone and Melvin Malone, moved the Court for a directed verdict in their favor on all counts of their respective declarations and the Court sustained this motion and dismissed all of the suits.

After motions for a new trial in each of the cases was heard and overruled an appeal was prayed and perfected to this Court and assignments filed.

## II

Plaintiffs below assign as error the action of the Court in reconsidering and sustaining the plea in abatement and we will consider same at this point.

The evidence preserved in the Wayside Bill of Exceptions and which was introduced on the hearing of the plea in abatement appears in the transcript at pages 30-41 of volume 1, and an exhibit which is on page 87 of volume 2.

This is the only evidence that can be considered by this Court in determining the correctness or incorrectness of the trial Court's action on the plea in abatement.

Counsel for L-Cart, Inc., have referred to evidence in the record at the trial of the cause on its merits. We find under Code Section 27-108, T.C.A. and the notes thereunder a long line of cases holding that evidence heard on a subsequent trial or hearing of an issue cannot be considered by the Appellate Courts in acting on assignments of error in the first hearing. Howell v. Wallace E. Johnson, Inc., 42 Tenn.App. 15, 298 S.W.(2d) 753; Meacham v. Woods, 205 Tenn. 18, 325 S.W.(2d) 281; Thompson v. Jarrett, 44 Tenn.App. 513, 315 S.W.(2d) 537.

It appears from the record that the Court overruled the plea in abatement of defendant L-Cart, Inc., in April 1961 after hearing proof and considering the matter and, as hereinabove noted, some 23 months thereafter, to-wit, in March 1963, reconsidered its action on the plea in

abatement and reversed the former judgment and decree and sustained the plea.

It would appear that the judgment of the Court in April 1961 was allowed to become final and was not subject to reconsideration after the expiration of 30 days and the end of the term of Court at which it was pronounced.

In this case the motion for a new trial suspended the original judgment but when it was finally acted on and the final judgment rendered overruling a motion for a new trial this judgment became final insofar as the plea in abatement is concerned and it was not subject to be reconsidered by the trial judge.

We have a number of reported decisions dealing with this subject wherein the rule is stated as follows:

"While the line between interlocutory decrees, subject to be revised at a subsequent term, and those not subject to such reconsideration, cannot be scientifically defined, yet it may be stated as the general rule that, if such interlocutory decree settles a principle, or adjudges a right, or determines an issue, then, in such case, it is not open for revision at a subsequent term." Allen v. Shanks, 90 Tenn. 359, 16 S.W. 715; Boyd v. Sims, 87 Tenn. 771, 11 S.W. 948; Johnston v. Hanner, 70 Tenn. 8-10; Meek v. Mathis, 48 Tenn. 534; Vaccaro v. Cicalla, 89 Tenn. 63, 14 S.W. 43; Citizens Bank, etc. Co. v. Bayles, 153 Tenn. 40, 281 S.W. 932; Mayor and Aldermen of Morristown v. Love, 160 Tenn. 177, 22 S.W.(2d) 769.

" 'In other words, all interlocutory decrees which determine an issue shall be treated as final and not subject to review at a subsequent term.'

"It follows, from the foregoing, that the trial court was without authority to review the judgment entered during the February term at a subsequent term; so that the status of the cases is the same as if no motion for a new trial had ever been made, on account of the action of the trial court in not sustaining the plea in abatement." Mayor and Aldermen of Morristown v. Love, 160 Tenn. 177-184, 22 S.W.(2d) 769-771.

"An interlocutory decree, adjudging rights or settling principles, is not subject to revision at subsequent term of court, though it is not final and no appeal lies therefrom." Maury County Trust Co. et al. v. Consolidated Phosphate Co. et al., 179 Tenn. 8, 162 S.W.(2d) 397, 169 A.L.R. 116.

"Chancellor may not, at a subsequent term of court, revise a decree by which rights were adjudicated or principles settled." Watts et ux. v. Roberts et al., 185 Tenn. 313, 206 S.W.(2d) 307.

Also see Boyd v. Sims, 87 Tenn. 771, 11 S.W. 948, where it was said:

"When parties after a demurrer is finally overruled, have put their cause at issue, and gone to the trouble and expense of taking the proof necessary to present the merits of the controversy for determination, they are entitled to have it so determined, and such decree submitted to this court for review with all others, on demurrer or otherwise, which are open to revision on appeal."

In Allen v. Elliott Reynolds Motor Co., 33 Tenn.App. 179, 230 S.W.(2d) 418, in an opinion by Judge Felts it was said:

"It is true the first decree was an interlocutory one which adjudged the issue of liability and which was not open to revision by the Chancellor at a subsequent term. But this does not mean that it is not open to review on appeal. Since it was an interlocutory and not a final decree, defendants had no right to appeal from it. Nor was it necessary for them to except to it at the time that it was entered. The effect of their broad appeal was to bring up the whole case for trial here de novo upon a re-examination of the whole matter of law and fact appearing in the record."

█ It thus appears that assignment of error No. 1, is good. However, under the circumstances shown here, the error will have to be considered as harmless since the question of the sufficiency of the plea in abatement under the proof is before us for determination on the Wayside Bill of Exceptions and we will pass on it regardless of the later action of the trial Judge in sustaining it.

█ Process was served on the defendants, Melvin Malone and Butler Malone, as agents of L-Cart, Inc., a foreign corporation, pursuant to Sections 20-220 and 20-221, T.C.A.

Section 20-220 provides that any corporation claiming existence under the laws of the United States or any other State or of any country foreign to the United States shall be subject to the same extent that corporations of this State are by the laws thereof *so far as relates to any transaction had in whole or in part in this State or any cause of action arising here.* It further provides that any such corporation having any transaction with persons or having any transactions concerning any property situated in this State through any agency

whatever acting for it within the State, shall be held to be doing business here within the meaning of this section.

Section 20-221 provides that process may be served on any agent of the corporation found within the county where the suit is brought, no matter what character of agent such person may be and that it shall be sufficient to serve process on any person if found within the county where the suit is brought who represented the corporation at the time the transaction out of which the suit arises took place.

In the recent case of Atchison, Topeka and Santa Fe Railway Co. v. Ortiz, 50 Tenn.App. 317, 361 S.W.(2d) 113, decided by the Western Division of this Court, in an opinion by Judge Avery, numerous cases involving the question at hand were discussed and the holding in Tucker v. International Salt Company, 209 Tenn. 95, 349 S.W.(2d) 541, cited by defendants herein, which was decided in accord with the ''Old Drummer'' cases that were so often before our Federal Courts in the past, was distinguished from Atchison, T. & S. F. Railway Co. v. Ortiz. He pointed out that the Courts have said that the factors to be considered in determining whether or not a foreign corporation has so activated itself in a state that it is subject to jurisdiction of the State's Courts are; (1) the nature and character of the business; (2) the number and type of activities within the forum; (3) whether such activities give rise to the cause of action; (4) whether the forum has some special interest in granting relief; and, (5) the relative convenience of the parties, Service of process was sustained in Atchison, T. & S. F. Railway Co. v. Ortiz on the ground that the agent was doing a substantial business in the State of Tennessee, sufficient to meet these tests, aside from the fact that this

agent had nothing to do with the actual making of the contract out of which the transaction grew. The opinion referred to the case of Tucker v. International Salt Co., 209 Tenn. 95, 349 S.W.(2d) 541, wherein it was said:

"To be sure the United States Supreme Court has come a long way from the original personal service requirement of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. There are numerous cases since then showing a liberalization or broadening of the rule under various circumstances to permit or require service on foreign corporations where it has manifested its 'presence' in the forum state."

The opinion further quotes at length from McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed(2d) 223, written by Mr. Justice Black for the Supreme Court of the United States, wherein it was said: "Looking back over the long history of litigation it is shown that a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years."

The proof offered by L-Cart, Inc., in support of its plea in abatement was the testimony of the defendants Butler Malone and Melvin Malone who stated that they were not agents of L-Cart, Inc. However, on cross-examination, Mr. Melvin Malone was asked and answered as follows:

"Q. You are their dealer here in this State, dealer for Belvedere Trailers in this area, are you not?

"A. That's right."

There was also introduced a warranty contract of L-Cart, Inc., shown at page 87 of Volume II of the transcript which, on its face, warrants each new coach manufactured by it to be free from defects in materials and workmanship under normal use and service, and provides at the bottom thereof, "This warranty must be signed and dated by the Dealer before becoming valid."

There is a check and a bill of sale identified by Mr. Butler Malone who stated he was in business at Cookeville as Trailer Park & Sales and that the check given for this trailer which he sold to Mr. and Mrs. Robinson was made payable to the manufacturer, L-Cart, Inc. The further testimony of the dealer was that he had been selling these Belvedere trailers since sometime in 1959, had sold some ten, twelve or fourteen of them which he ordered and brought to Cookeville, and that he is "Their dealer here in this State, dealer for Belvedere trailers in this area."

It was also testified by Mr. Malone that when he delivered the Belvedere trailers he customarily delivered these Warranty Contracts to the purchasers of the Belvedere trailers and signed them here in Tennessee, although he had not signed the particular warranty contract which he delivered to the plaintiffs herein, and it had not been signed by plaintiffs when the explosion occurred which gave rise to this litigation.

We think the proof as shown in the Wayside Bill of Exceptions is sufficient to sustain the action of the trial Judge in overruling the plea in abatement and that his subsequent action in sustaining this plea was erroneous.

## III

We now deal with the action of the Court in directing a verdict for the defendants, Butler Malone and Melvin Malone, d/b/a, etc.

As pointed out in the brief of counsel for plaintiffs, the three suits contain three counts as to Brisco Robinson and Helen Robinson, namely, common law negligence, implied warranty, and express warranty. The suit as to the child, Karen Boles, involves only the common law count.

The common law count in each declaration alleges that Malone Brothers as sellers and dealers in this type of mobile homes failed to check, inspect, and take precautions, to see that this mobile home and its equipment was safe for use and free from danger, and that they advised Brisco Robinson and Helen Robinson that same was fully equipped and ready for use except for connecting the gas and electricity outside the trailer itself. They further alleged that inspection was a duty imposed by law upon the dealers and that they breached this duty. A summary of the evidence on this question is as follows:

The Robinsons in the Fall of 1960 bought a Belvedere trailer or Mobile Home from the defendants, Melvin and Butler Malone, doing business as Cookeville Trailer Sales; that before the purchase Robinson and his wife had looked at one or more of these Belvedere Mobile Homes on a lot where they were kept by the defendants and were shown pamphlets or booklets containing pictures and descriptions of the homes and their equipment. The trailer they purchased was mounted on wheels and could be hitched to a car or truck and moved about. It was fully furnished with beds, washing machine, gas

furnace, stove etc., all of which was bought as a part of the mobile home; that it was purchased as a completed unit ready to be moved into.

Mr. Melvin Malone testified that he and his brother were a partnership and that when he took the order from Mrs. Robinson for this home and equipment she gave him a check for $300.00 and when the trailer was ready for delivery he went to the L-Cart factory in Elkhart, Indiana, and picked up the home and pulled it from Elkhart to Cookeville and delivered it to the plaintiffs.

When Mr. Robinson got notice that the mobile home was to be delivered he called Woodrow Jackson to come and connect the electricity to it. He also called Southern Propane Gas Co. to send a man out to connect the gas to the trailer. The gas line leading from the gas stove in the trailer to the front of the trailer was a part of the installation purchased with the trailer, and it was stated that all that a gas man had to do was screw out the plug from the gas line and screw in the adapter outside on the trailer—just pull the copper line around and screw it together. Mrs. Robinson testified that during the course of hooking up the utilities the defendant, Melvin Malone, came into the trailer and gave her the title papers to it and she gave him a check in full for the balance on the trailer.

The stove which was purchased with the gas lines running underneath the mobile home was built-in with cabinets around and under it. The stove had openings at the burners. The mobile home was also equipped with a gas furnace. Brisco Robinson testified that the propane gas man did not show up to make the connection and

that he asked the defendant, Melvin Malone, about having Mr. Jackson help him make this connection to the gas tank and that Mr. Malone said that would be all right, that Jackson knew how to do that kind of work. Mr. Robinson also testified that he asked Mr. Melvin Malone if there was anything else to do except hook the gas line on the front of the trailer to the line outside and Mr. Malone said as far as he knew that was all there was to do.

Mr. Malone testified that before he delivered the trailer he told Mr. Robinson that he would have to have a gas man to make the connection of the gas to the trailer. Mr. Robinson denied that Mr. Malone suggested to him that he call Southern Propane Gas Company to get expert help to come out and do the work. Mr. Robinson said that all he knew or was told that had to be done to the gas utility was to hook up the gas line on the outside of the trailer. After the trailer was delivered no inside connections were made at all.

After the connection of the gas line on the mobile home to the gas line outside was made, Mr. and Mrs. Robinson and the child, Karen Boles, went in the mobile home. Mr. Robinson turned the gas knob on the gas stove to light it, and struck a match whereupon the explosion occurred. It knocked his wife down on the floor and severely burned her and the child and Mr. Robinson causing then to be hospitalized. The explosion who so terrific that it blew the sides of the trailer apart. After the explosion, an examination was made while the plaintiffs were in the hospital and it was found that a part was missing in the gas line in the stove inside the trailer, which missing part was underneath the burner plates of

the stove and which could not be seen by examining the outside of the stove.

Mr. Jackson took the burners off the top of the stove and found this missing connection in the line underneath the burners and testified that this part had never been on the stove in the first place.

Mr. Robinson testified that when he started to light the stove there was no book of instructions or visible papers in or around the stove and no warning or danger notices anywhere inside the trailer.

Under these facts, we are constrained to believe that there was a jury question as to negligence on the part of the defendants, and contributory negligence of plaintiffs and that it was error on the part of the trial Judge to take the case from the jury and direct a verdict for the defendants, having in mind the applicable rule announced in numerous cases that we must take as true all evidence for the plaintiffs, allowing all reasonable inferences and resolving all doubts in their favor in passing on defendant's motion for a directed verdict. Lackey v. Metropolitan Ins. Co., 30 Tenn.App. 390, 206 S.W.(2d) 806; Smith v. Sloan, 189 Tenn. 368, 225 S.W.(2d) 539, 227 S.W.(2d) 2.

It results that the assignments of error are sustained, the judgment of trial Court is reversed and the cause is remanded to the trial Court for a new trial.

Reversed and remanded.

Humphreys and Puryear, JJ., concur.