STATE OF TENNESSEE, COMPLAINANT, APPELLANT, *v.* IRA C. ALLSTADT, SR., *et al.,* DEFENDANTS, APPELLEES.

(*Nashville,* December Term, 1932.)

Opinion filed June 24, 1933.

Petition to rehear denied July 19, 1933.

350 

IKE W. CRABTREE, H. R. RATCLIFF and ROY H. BEELER, Attorney-General, for complainant, appellant.

McDONALD & McDONALD, C. C. BROWN, CHARLES M. BRYAN and SIVLEY, EVANS & EVANS, for defendants, appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed in the name of the State, suing through the Attorney-General, against Ira C. Allstadt and members of his family, the Self-Server, Inc., a corporation engaged in the distribution of gasoline, the Bank of Commerce & Trust Company, and Union & Planters Bank & Trust Company, trustees holding the legal title to certain real estate, and the Fidelity & Deposit Company of Maryland, surety of the Ira C. Allstadt Corporation on its bond executed June 8, 1929, in conformity with section 1145 of the Code, formerly chapter 124, Acts of 1929.

The chancellor sustained defendant's demurrer to the bill. It appears from statements and allegations in the bill that Ira C. Allstadt Corporation was adjudged bankrupt December 21, 1932, with assets of $4584.50, which, it is said, would not realize exceeding $2,000 for distribution to creditors. When the Ira C. Allstadt Corporation was adjudged bankrupt, it is charged that it was indebted to the State, on account of gasoline taxes, $33,-350.59, and the bill was filed to collect the taxes, the penalty and interest.

In June, 1928, Ira C. Allstadt incorporated his business as Ira C. Allstadt, Inc., with a capital of $25,000. In January, 1929, the corporate name was changed to Ira C. Allstadt Corporation and the business was expanded so as to include a storage place, a service station on Highway No. 61, a service station on Poplar Pike, another on Central Avenue, Memphis, in addition to others not necessary to mention. December 17, 1931, the four places specifically mentioned, together with the real estate on which they were situated, were conveyed, pursuant to a resolution of the board of directors, to Ira C. Allstadt, Sr., for the nominal consideration of $10.

It was charged that this transfer was fraudulent and void.

The Ira C. Allstadt Corporation continued in business, and prior to January 1, 1932, it made regular reports to the Commissioner of Finance and Taxation and, according to the statements of the bill, paid the gasoline tax each month. But in January, 1932, without permission of the Commissioner of Finance and Taxation, it was charged that the corporation changed the basis of its reports from receipts to sales, and from January to September, 1932, purported to pay the tax on sales instead of on receipts of gasoline, so that when adjudged a bankrupt in December, 1932, it was liable for the $33,350.59 claimed.

In support of the charge it was shown that the Ira C. Allstadt Corporation had on hand October 1, 1932, 140,000 gallons of gasoline; received in October 158,682 gallons, in November 184,199 gallons, and December 40,581 gallons, and disposed of 523,472 gallons. October 29, 1932, the defendants Ira C. Allstadt, Jr., and Dorothy Broome incorporated the Self-Server, Inc., and Allstadt, Jr., transferred to this corporation the service stations on Central Avenue, Lamar Avenue, and Hernando Road, in consideration of which the capital stock of the newly incorporated company was issued to him in the sum of $10,000. It was charged that this transaction was fraudulent and that the assets of the Self-Server, Inc., are liable to the claim of the State for taxes. It was also charged that the Allstadts diverted funds from the Ira C. Allstadt Corporation to their own use through payment of large sums for alleged salaries and that the sums so received by them are subject to the claim of the State for the delinquent taxes.

January 8, 1929, Ira C. Allstadt Corporation executed the bond required of gasoline dealers by section 16, chapter 124, Acts of 1929, Code, section 1145, in the penalty of $10,000, with the Fidelity & Deposit Company of Maryland as surety. It was alleged that the surety is liable upon its bond.

The relief prayed was (1) a decree against the officers and directors of Ira C. Allstadt Corporation for the amount of the State's claim; (2) against Fidelity & Deposit Company of Maryland upon its bond, and (3) to impound by attachment and injunction the property of Ira C. Allstadt, Sr., Ira C. Allstadt, Jr., Mrs. Cornelia Allstadt, and Self-Server, Inc., for the satisfaction of the State's claim for the gasoline taxes against the Ira C. Allstadt Corporation.

The chancellor was of the opinion:

"That the suit is improperly brought in the name of the State of Tennessee, and that instead, it should be brought in the name of the State of Tennessee for the use and benefit of the Comptroller of the State of Tennessee if the State or any official thereof has the right to sue.

"That neither the State of Tennessee nor any officer thereof has the right to prosecute the suit, but that such right, if it exists, is the right of the Trustee in Bankruptcy for the Ira C. Allstadt Corporation; that there is no equity on the face of the bill; and that the suit against the defendants Allstadt, if maintainable, is one for unliquidated damages."

The object of the action is to recover gasoline taxes alleged to be due from Ira C. Allstadt Corporation and to enforce payment from property and assets alleged to

have been fraudulently transferred by that corporation to its co-defendants above named.

When the bill was filed the bankrupt's estate had passed to the custody of the trustee in bankruptcy and was subject to the jurisdiction of the bankruptcy court, which impounded the property of the bankrupt and transferred it to the trustee, including not only the title to the visible property but also the right to recover property transferred by the bankrupt in fraud of creditors. 7 C. J., 91-127.

The trustee in bankruptcy is the only person who can maintain an action to set aside the alleged fraudulent transfers and conveyances of the bankrupt's property, which was under the exclusive control of the bankruptcy court. The demurrer upon this ground was a sufficient defense to the action by the State against those to whom it is alleged the bankrupt had fraudulently transferred its assets. 7 C. J., 177.

Officers and directors of a corporation who fraudulently convert or mismanage the corporate assets are primarily liable to the corporation and ultimately liable to its creditors and stockholders. But the right of creditors, and for that matter of stockholders, to sue and recover rests upon the doctrine of subrogation and may be asserted only after the directors of the corporation have refused to sue for its recovery or upon a showing in the bill of circumstances that would render it useless to demand action by the corporate authorities. This right of the corporation to recover the assets alleged to have been fraudulently transferred passed to the trustee in bankruptcy. No demand was made upon him to sue, he is not a party to this action, and, as stated, he alone is au-

thorized to maintain the action to subject the corporate assets to the obligations of the corporation.

It affirmatively appears from the record that the Commissioner of Finance and Taxation employed Mr. Ike W. Crabtree, an attorney of Memphis, to file the suit. As said in *Dempster* v. *Wallace*, 165 Tenn., 147:

"The legislature constituted the Commissioner of Finance and Taxation the State's agent to ascertain the tax liability and when ascertained in the manner indicated by the statutes referred to, the taxpayer was required to remit the tax to the Comptroller along with the monthly statement on the forms prescribed by the Commissioner. Nothing was left for the Comptroller to do but receive the tax ascertained through administrative measures executed by the Commissioner."

Section 3, chapter 124, Acts of 1929, carried into the Code, section 1137, provides that in cases of delinquency the Commissioner of Finance and Taxation shall deliver a statement of the taxes due to the Comptroller, who shall proceed to enforce payment. This section also provides that upon request of the Comptroller it shall be the duty of the Attorney-General to institute and prosecute to conclusion all proper suits for the collection of delinquent gasoline taxes.

By the provisions of the gasoline taxing act, the Comptroller is expressly designated as the State's agent to sue in the name of and for the use of the State to recover delinquent gasoline taxes. Where the statute expressly designates an official of the State as its agent to sue for and collect taxes, other officers not authorized to sue cannot do so. 61 C. J., 1054, section 1382.

If the Allstadt Corporation is indebted to the State for delinquent taxes, the Fidelity & Deposit Company of

Maryland, its bondsman, would be liable as surety, and under section 1137 of the Code the Comptroller could issue a distress warrant against the delinquent principal and against the surety on his bond. Or the Comptroller could request the Attorney General to institute suit upon the bond. But it affirmatively appears from the record that no statement has been filed with the Comptroller and nothing presented to him for action toward recovery of the delinquent gasoline taxes, and that the bill was filed without his authority.

We are of the opinion that the chancellor properly sustained the demurrer for want of authority in the Commissioner of Finance and Taxation to employ counsel to file the bill. We direct, however, that the bill be dismissed without prejudice to the State's right to take such further steps as may be necessary to enforce payment of any delinquent taxes due from the Allstadt Corporation.

Affirmed.

### Response to Petition for Rehearing.

It is urged through the petition for rehearing that the court overlooked the material fact that this is a suit for the collection of taxes not dischargeable in bankruptcy and that the bill may be maintained by the State. The opinion filed is referred to for the discussion of that subject.

It may be added that this is not a direct proceeding, as by distress warrant, to enforce payment of taxes. It is an effort to set aside alleged fraudulent transfers by the bankrupt. All assets of the bankrupt, including choses in action, passed to the control of the trustee upon the adjudication of bankruptcy. He alone can maintain

suits to recover them. The fact that taxes are non-dischargeable in bankruptcy would not authorize the State courts to ignore provisions of the bankruptcy act which clothe the trustee with exclusive power over the bankrupt's assets. The priority of the State's claim, recognized by section 17 of the bankruptcy act, does not affect the power of the trustee over the bankrupt's assets. When the assets are gathered by him, the act controls their distribution, and under it the State's claim for taxes is given priority.

It was not necessary, in the opinion filed, to discuss the question of whether or not the bill stated an action for unliquidated damages, for the determination was conclusively rested on two other propositions. Because we did not, authorizes no inference that the court intended to hold that an action by the State to recover taxes was a suit for unliquidated damages.

The rehearing is denied.