James H. Akin and Cornelia Akin

*v.*

J. R. Mackie, President and Treasurer of
Akin Brothers, Incorporated.

(*Nashville*, December Term, 1957.)

Opinion filed February 6, 1958.

SHELTON LUTON, Nashville, for appellants (defendants).

DAVE A. ALEXANDER, Franklin, for appellee (plaintiff).

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainants, James H. Akin and Cornelia Akin, are stockholders in Akin Brothers, Inc., a Tennessee corporation. They filed their original bill against the defendant, J. R. Mackie as President and Treasurer of the aforesaid corporation, seeking a discovery and an accounting.

■ The bill alleges that the complainants own forty-nine (49%) per cent and the defendant the remaining fifty-one (51%) per cent of the outstanding stock of the said corporation. The complainants originally owned a majority of the stock. However, in December, 1954, the defendant invested $10,500 in the corporation and thereby became the majority and controlling stockholder.

■ The bill further alleges that from the time the defendant acquired the controlling interest in the corporation he became very secretive about the management of the corporation's affairs, and it became increasingly difficult for the complainants to discover the true financial condition of the corporation; that the defendant stated repeatedly that the business was fast becoming insolvent and should be adjudged a bankrupt, and further stated that no corporate books were kept during the year 1955, during which time the defendant had absolute control of the business.

■ The bill further charges that at the time the defendant acquired controlling interest the books of the corporation showed accounts receivable in the amount of $16,888, and that it was a "going concern", but that the complainant, Cornelia Akin, drew only $150 from and after the date the defendant acquired control, and that complainant, James H. Akin, drew only $1,200; that on March 1, 1955, the complainant, James H. Akin, was forced to resign his position with the corporation because the situation in the management became "intolerable".

In the final and concluding paragraph of the bill the complainants charge that while "they impute no dishonesty on the part of said J. R. Mackie as President and Treasurer of said Corporation" yet "they are completely

in the dark as to its financial affairs or what has transpired as to the Corporate records since December, 1954. They state, and they verily believe, that the only way the matter might be straightened out will be through a full and complete discovery and disclosure as to all of the assets, liabilities, income and expenditures which have taken place since December of 1954, to the date of the filing of this petition, and further that an accounting be had and that their interests be ascertained. They firmly believe that they are entitled to this relief as minority stockholders of said Corporation."

The bill prays for service of process and for a discovery as to the financial condition of the corporation as of the date the defendant acquired controlling interest, to wit, "3rd day of December, 1954." The prayer goes into detail as to matters sought to be discovered and that defendant be required to answer each under oath.

The corporation as such was not made a party defendant to the bill.

The defendant filed a plea in abatement upon the ground that at the time the bill was filed he was a resident of Davidson County, Tennessee, and was not in Williamson County and was not in the latter county when the bill was filed or when process was served upon him and that the bill should be dismissed.

The plea was later amended to state that "the charter of Akin Bros., Inc., was revoked on or about May 19th, 1954, by the State of Tennessee."

The complainant's response to the plea averred that it came too late because it was not filed at the appearance term.

The Chancellor overruled the plea on the ground that it "came too late". His disposition of the plea in abatement is not an issue on this appeal.

The defendant's demurrer to the bill is, as follows:

"The bill seeks an accounting and discovery in connection with the business of Akin Bros., Inc., a corporation, but does not name said corporation as a party to the suit, for which reason no complete decree can be made in the cause."

The demurrer was overruled, and a discretionary appeal granted to this Court.

The defendant's motion to dispose of the demurrer is "to dispose of the Demurrer incorporated in his Answer heretofore filed herein."

Immediately following the demurrer there follows a sworn answer, "but not waiving his foregoing demurrer."

The answer admits as true certain charges in the bill and makes specific denial as to others. It purports to give a complete history of the defendant's connection with Akin Bros., Inc., but denies that he was secretive about the management of the business and also that for six months before the filing of the bill it became increasingly difficult for complainants to discover the true financial picture existing in said corporation.

The answer avers also that the complainants had access to the records of the corporation and for this reason the bill for a discovery should be dismissed. It is also denied that defendant made statements that "no corporate books, as such, were kept and maintained by said corporation during the year 1955".

There appears this further averment in the answer:

"Defendant further avers that complainants are not entitled to a discovery and accounting to the extent requested in their bill because they are now and have been officers and directors of Akin Bros., Inc., throughout all the time defendant has been interested therein, and as such officers and directors the complainants are chargeable with knowledge of its affairs to the same extent as the defendant."

Another specific averment in the answer is that shortly after the bill was filed the defendant and the bookkeeper for Akin Bros., Inc., went over all accounts, daily sheets, checks and deposit records and accounted for all of the money that had come into Akins Bros., Inc., from December 3, 1954, to October 15, 1955, and this audit was typed, including all report sheets, cancelled checks, deposits, etc.; that "Approximately fifteen days after completion of said audit or report, the report and the records from which it was taken disappeared from the Company's office. Defendant does not know the whereabouts of said audit and records. Without said audit and records, the defendant could not specifically answer the questions put in complainants' bill."

The foregoing is a fair summary of the defendant's response to the bill for discovery. Whether or not it is sufficient under the rules of chancery practice and procedure is yet to be determined by the Chancellor. In overruling the demurrer he ordered a reference to the master to hear proof on the issues made in the bill and answer and report his findings to the court.

The cause was not heard on bill and answer, wherein the facts stated in the answer "must be considered as true". Moreover, the said answer could not be considered as a part of the demurrer since it would be objectionable as "a speaking demurrer". The learned Chancellor evidently considered it for clarification of the grounds of the demurrer, the substance of which is (1) that the bill does not name the corporation as a defendant and (2) a minority stockholder cannot have an accounting without first exhausting his legal and equitable remedies against the corporation's directors by notice and formal request to correct what is believed to be a violation of their duties to the stockholders.

The only assignment of error complains of decree over-ruling the demurrer, and ordering a reference.

Before discussing the merits of the foregoing assignment it is important to note that the complainants and the defendant own all the stock in the corporation. The three of them compose the Board of Directors. Ordinarily such board is directly responsible for the management of the business for the benefit of the stockholders. Thus it is in the instant case they are responsible only to themselves.

■ Now it is true, as a general rule, that a bill cannot be maintained by a stockholder for the use of the corporation when a majority of the board of directors is competent and qualified to act in the matter, and there has been no demand made upon them, or refusal by them, to bring a proper suit. *State v. Mitchell,* 104 Tenn. 336, 58 S.W. 365; *State v. Allstadt,* 166 Tenn. 349, 61 S.W.2d 473, 62 S.W.2d 566; and *Boyd v. Sims.* 87 Tenn. 771, 11 S.W. 948, 949.

In the latter case, after a review of the duty devolving upon a majority of stockholders, exercised through Trustees or Directors, it is said:

"* * * But it is clear that no stockholders should be permitted to interfere and control the management or frustrate the purposes of the corporation merely upon an allegation of the existence of a state of affairs contrary to their judgment of propriety, without any effort to have it charged in the mode indicated. Any other view would be destructive of the purposes for which corporations are formed, and of the principle of corporate action and management. It would make them hot-houses of litigation, and leave the valuable franchises held by them at the mercy of the misjudgment, passion, or speculative propensities of individual stockholders. While the rule announced neither permits abuses in this or the opposite direction, it does not prevent suits for abuse of trust, or mismanagement. It only requires that stockholders proceed in that lawful and orderly way for the correction of abuses within the corporation which they have engaged to do on becoming shareholders in it, which its existence and interest require they shall do, — to reform alleged abuses before involving the corporation and other shareholders therein in litigation; but it equally provides that when they have done this, and found themselves unable to obtain relief to which they are entitled, it will be given them by the courts."

While fully appreciating the soundness of this general rule as thus stated there is a clear and well recognized exception to the above general rule. What is the nature of this exception? It is announced in *McCampbell v. Foun-*

*tain Head Railroad Co.,* 111 Tenn. 55, 77 S.W. 1070, and also in *Peeler v. Luther,* 175 Tenn. 454, at page 459, 135 S.W.2d 926, at page 928, as follows:

" 'It is within the power of the court to decide in every instance upon the facts shown whether or not a request to bring suit would have been an idle ceremony; and in the exercise of this power the court is vested with considerable discretion. A demand upon the corporate authorities for redress of the grievance complained of may be dispensed with as a condition precedent in a stockholder's suit in behalf of the corporation, where it appears that such a demand would be useless and unavailing in that it either would be refused or if granted the litigation would necessarily be under the control of parties opposed to its success. It need not be made where the corporation is under the control of the wrongdoers or if persons who are necessary parties defendant.'

"This exception to the general rule requiring demand to be first made on the corporate management is recognized in Tennessee. See *McCampbell v. Fountain Head Railroad Co.,* 111 Tenn. 55, at page 68, 77 S.W. 1070, 102 Am.St.Rep. 731, citing *Hawes v. City of Oakland,* 104 U.S. 450, 26 L.Ed. 827; *City of Detroit v. Dean,* 106 U.S. 537, 1 S.Ct. 560, 27 L.Ed. 300."

The Chancellor correctly held that the instant case was controlled by the exception noted above rather than the general rule. His conclusion is thus stated:

"So, here, complainants and the defendant, according to the allegations to the bill, which must be taken as true when assailed by demurrer, own all of the stock

issued and outstanding. So far as the allegations of the bill are concerned no other parties are interested; for the complainants to have asked themselves and the defendant to institute suit on behalf of the corporation would have been a vain gesture.

"According to the bill the President and Treasurer who holds the money of the corporation is the alleged wrongdoer and certainly cannot deplete the Treasury at the expense of the minority stockholders. Of course, the complainants will be subrogated to the rights of the corporation if that becomes necessary."

Conceding that the general rule controls the right of the complainants, the result would be the same since they constitute a majority of the Board of Directors. It is wholly immaterial that the bill was filed by them as stockholders rather than as the governing board for and on behalf of the corporation. A decree sustaining the bill would inure to creditors of the corporation, if any, and any surplus, existing after the payment of debts, would be subject to any lawful disposal by the corporation's Board of Directors.

We think the Chancellor's decree directing an order of reference was proper. The charges made in the bill that the defendant claimed to have kept no records of business transactions after he acquired control of a majority of the stock, and that the corporation was on the verge of bankruptcy all of which was admitted to be true by the demurrer, is, in our opinion, sufficient grounds for maintaining this suit. It results that the assignment of error is overruled, and the Chancellor's decree affirmed. Remand for further proceedings.