J. Paul Neas et al.

*v.*

Tennessee Burley Tobacco Growers' Association et al.

*(Knoxville,* September Term, 1958.)

Opinion filed January 23, 1959.

FERDINAND POWELL, JR., COX, EPPS, POWELL & WELLER, Johnson City, for appellants.

N. R. COLEMAN, JR., H. R. SILVERS and FRAKER, SILVERS & COLEMAN, Greeneville, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

The appellants here, Tennessee Burley Tobacco Growers' Association, hereinafter called Association, was the agent for the years 1946 through 1950, and some other years thereafter, of that Federal Agency known as the Commodity Credit Corporation. This Federal Agency provided funds for the purpose of assuring farmers an adequate price for their tobacco by means of a non-recourse loan to each farmer on his crop equal to 90% of a fixed price called "parity". It was the business of this agency, the Association, by means of consignment, to take possession of, and sell, these crops thereafter at a time which seemed to it advantageous.

A further duty of the Association was to pay to the Federal Agency out of the proceeds of the sale of all the crops of any given year the loan which the Federal Agency had made for that year plus all expenses incident to such marketing.

The crops for each of the years commencing with 1946 and ending with 1949, inclusive, had been sold by the Association by the end of the year 1952. The surplus remaining after payment to the growers of one-half of the

1946 profits is a profit of some $563,000.00. Since that time the 1950 crop has likewise been sold by the Association.

The complainants to the present suit are more than five thousand (5,000) tobacco growers whose respective crops for all or some of the years, 1946-1949, inclusive, were sold by the Association. Some nine thousand (9,000) other such tobacco growers have sought by petition to be made party complainants. Action on that petition awaits the outcome of this appeal. The purpose of the suit instituted by these tobacco growers is to force the Association to distribute in cash to each of them his or her pro rata part of the aforesaid profit of $563,000.00, and likewise his pro rata part of the 1950 surplus. It seeks likewise to maintain the suit as a general creditor's bill.

In the exercise of a discretion vested in him by statute, the Chancellor has allowed this appeal from his action in (1) overruling the Association's motion to dismiss the bill on the ground that the State Courts are without jurisdiction, and (2) in entering a *mandamus* decree pursuant to a motion of complainants.

In the case of *Range v. Tennessee Burley Tobacco Growers' Association,* 41 Tenn.App. 667, 298 S.W.2d 545, about eleven (11) tobacco growers, acting as a group, instituted a suit identical to the one here against this Association. They sought and procured a decree compelling the payment in cash by the Association of their respective pro rata parts of this surplus from the sale of these 1946-1949 crops.

In the Range case the Association raised many questions in resistance to the claim of complainants. But at

no time did it suggest a lack of jurisdiction in the State Courts. To the contrary, it impliedly conceded jurisdiction, and was an active party to the making of a record of several thousand pages as to the merits or demerits of complainants' claims.

In the Range case this Association admitted that these profits belonged to these respective tobacco growers, but denied that they were entitled to have their respective shares distributed to them in cash. Its insistence was that it had a right to use this surplus for its own purposes as an Association until such time as it saw fit to distribute the same in cash to the respective owners out of the surplus proceeds, if any, derived from the sale of crops of a future year or years, regardless of whom such future surplus might belong. The Chancellor rejected that insistence and adjudged it to be the duty of the agent Association to distribute in cash to those complainants, tobacco growers, their pro rata share of the 1946-1949 surpluses profits. This decree of the Chancellor was affirmed by the Court of Appeals in an opinion announced on August 24, 1955. It is reported in 298 S.W.2d commencing with page 545.

This Court denied *certiorari* and two petitions to rehear. Its written opinion in each of the three denials is filed as a part of the record in the case and copies thereof made a part of the bill in this cause, as is a copy of the Court of Appeals' opinion. The Association then petitioned the Supreme Court of the United States for *certiorari*. That petition was denied.

With the exception perhaps of the eleven (11) complainants in the Range case, the Association has continuously refused to comply with its duty, as adjudged in

the Range case, by distributing in cash this surplus to owners so demanding. According to the bill in the present case, it has used this surplus, or much of it, to acquire or build warehouses and dryers with title taken in the name of the Association. Now, when sought by this bill to be made to comply with the decree in the Range case, it defends by saying for the first time that the State Courts lacked jurisdiction of the subject matter; hence, its judgment in the Range case is *coram non judice*.

Preliminary to invoking in support of this contention 41 U.S.C.A. sec. 15, it is insisted that the United States and the Commodity Credit Corporation have an interest in this $563,000.00 surplus and are, therefore, indispensible parties to any lawsuit involving this surplus, and that this suit can be maintained only in Federal Court, and that the United States has not given consent to be sued.

Reference to the Court of Appeals' opinion in the Range case, and to that of this Court, responsive to the petitions to rehear, discloses the fact that in the answer of the Association it was admitted that after the loan by the Commodity Credit Corporation for each of these years had been paid, together with expenses incident to the sales, then, quoting the language of this answer, "the equities" (profits) "remaining on hand belong to the tobacco growers who had tobacco taken under loan— they can either have it paid back in cash or they can retain it in the hands of the Association—" etc. (Tr. pp. 31-32.) The litigation proceeded to a conclusion upon that theory with the insistence by the Association, for reasons here unnecessary to relate, that it was the sole judge as to when it would distribute such profits in cash.

The Chancellor, the Court of Appeals and this Court were in agreement in the Range case with the Association's then insistence that the Commodity Credit Corporation, the Federal Government, had no interest in this surplus of $563,000.00. This Court, as is the Chancellor, is of the same opinion now; and so holds, as has the Federal Court in *Scroggin Farm Corp. v. McFadden,* 8 Cir., 165 F.2d 10, 13. It, therefore, follows that the Federal Government, the Commodity Credit Corporation, its representative, were neither necessary nor proper parties to this suit, and that the State Court, as conceded by the Association in the Range case, has jurisdiction in the present suit of the persons and subject matter, and to adjudicate the merits of the claims of these persons as to their rights in the subject matter. The insistence that the State Court does not have jurisdiction is rejected.

Pursuant to a motion of the complainants during the progress of the case for an alternative *writ of mandamus* an do a subsequent order that the return thereto failed to show sufficient cause why the peremptory writ should not issue, the Chancellor ordered the issuance of the peremptory writ. The Association excepted at every stage of the proceedings on that question and was allowed this discretionary appeal, and here insists that the issuance of the writ was erroneous.

The adjudication in the Range case is that the tobacco growers involved were entitled to a distribtution pro rata in cash of these profits, and that it is the duty of the Association, the agent of Commodity Credit, to so distribute these profits. This adjudication is *stare decisis.*

Accordingly, the peremptory writ demanded the Association to (1) determine the amounts owed each of the

complainants "and such persons as may hereafter become complainants" whose 1950 tobacco crop it handled; (2) to pay in cash "in the manner hereinafter provided to each individual complainant, including those who may hereafter become parties," their respective shares of the net profits as reflected by the books, etc. of the Association, and in accordance with recitations on post cards mailed to these individuals by the Association for the crop years 1946 through 1949, and likewise to those sharing in the surplus of the 1950 crop; (3) that Association file with the Clerk & Master a schedule listing the share of each complainant of the net profits derived from the sale of the crops for the years 1946-1949, inclusive, "and deposit in cash such amounts in the registry of the Court," and likewise so deposit the profits of the 1950 crops, together with the filing of the supplemental schedule showing the name of all complainants in this cause sharing in the net profits for that year.

Some of the reasons assigned by the Association as to why the issuance of this writ was erroneous are automatically rejected by the hereinabove holding that the Tennessee Courts do have jurisdiction of the persons and subject matter involved in this suit. Other insistences as to why it was error to issue the writ are that (1) the bill allege the insolvency of the Association; hence, according to the bill it is impossible to obey the *mandaums;* (2) complainants have an adequate remedy at law; (3) it causes the Association to undo, correct or revise action already taken; (4) in effect, it is an attempt to require specific performance rather than compelling the Association to perform its legal duty; (5) has for its purpose the "enforcement of private contract rights"; (6) that "the

duties sought to be enforced upon it were doubtful"; (7) because it applies to unknown persons who may thereafter become complainants and the claims are unliquidated; (8) *mandamus* is not maintainable as a class action; (9) will not lie to enforce future rights; (10) was issued without any hearing on the merits; (11) because each complainant agreed that the Association might retain in its sole discretion all the net profits for Association purposes; (12) the principle declared in the Range case was not *stare decisis* as to the persons who were not parties to that suit.

The adjudication in the Range case established beyond any peradventure of doubt that it was the duty of the Association as agent for the Commodity Corporation to distribute in cash the profits involved here to the growers from whose tobacco the profit was made. Therefore, the Association has already had a hearing as to (a) the rights of the growers and (b) its duty to distribute in cash these profits. Notwithstanding this, the Association has completely ignored this adjudication of the State Court which is *stare decisis*. It is quite clear that this Association does not intend to distribute these profits except in so far as it is made to do so, regardless of an adjudication that such is its duty.

There are thousands of persons entitled to a distribution of some amount of the $563,000.00 profits made during one or more years, 1946-1949, by the sale of those crops, and of the profits, if any, made by the sale of the 1950 crops. The amount will vary to as low as $10.00. If the Association is not required to perform its duty of distributing these profits in accordance with the provisions of the *mandamus*, it is clear that the Association

will not pay to any such grower his part thereof, except upon separate suit instituted by that grower.

It is observed somewhere in the brief of this Association that it is beneath the dignity of the Court to entertain separate suits for $50.00 or less. It is a reasonable conclusion that thousands of persons to whom small amounts are due will refrain, as a practical matter, from ever getting the money which is owed by the Association unless this order of *mandamus* is sustained. They cannot financially afford to ascertain a place where service may be had upon the Association, go there and bring suit for the small amount owed them. There is, therefore, an inadequacy of remedy for thousands of claimants if this order of *mandamus* be not approved. By the same token this Association will be thereby unjustly, but very substantially, enriched by the retention of money which does not belong to it, and which it is its duty as a *quasi* trustee to distribute.

As far back as *Mobile and Ohio Railroad Company v. Wisdom,* 52 Tenn. 125, 158, it was held that where a specific duty either in equity or by fair and reasonable construction on implication exists by reason of a statute in force and there is no other adequate remedy the *writ of mandamus* will be awarded. This case clearly falls within that category.

The right of these tobacco growers is not based upon a contract between them respectively and the Association. Their respective rights are based upon the fact that the Association was appointed agent of the Government for the receipt of this tobacco and the sale thereof and with the duty of distributing in cash to those entitled the profits from such sale.

■ This was a ministerial duty, involving no discretion, which the Association was bound to perform as the agent of the Commodity Credit Corporation. This duty does not include an element of discretion in the Association. It steadfastly refuses to perform that ministerial duty. Where the duty of an officer or agent is ministerial not involving a discretion, but such officer refuses to perform that ministerial duty and the right of the claimant is clear and not subject to a dispute the performance of the duty of this agent or *quasi* trustee may be enforced by *mandamus*. *Phillips v. Marion County,* 166 Tenn. 83, 87, 59 S.W2d 507.

The claims are not unliquidated, nor are the claimants unknown. The Association has on its books who these people are, to whom the duty of distributing this money and also upon its books the amount owed each such person.

As to the writ being inappropriate because of the allegation in the bill that the Association is insolvent, the answer of the Association denies insolvency. Moreover, there seems to be applicable, on principle, on this point *Baker v. Donegan,* 164 Tenn. 625, 629, 47 S.W.2d 1095, 1096, 52 S.W.2d 152, cited by appellees, wherein the Court observes that ''the possible absence of funds for the satisfaction of the judgment does not interfere with the jurisdiction of the circuit court to render it''.

The duty of the Association to distribute these profits in cash was made absolutely clear of doubt by the adjudication in the Range case. The growers' ownership of these profits was conceded in that case.

■ Finally, ''it should be borne in mind that *mandamus* is a remedy of the extraordinary class to which the

well established rule is that the trial Judge has a broad discretion. The writ is known as a discretionary writ." *State ex rel Cravens v. Delk,* 175 Tenn. 614, 618 136 S.W. 2d 524, 525.

The facts of this case, as reflected by this record, require a holding that the Chancellor did not abuse his discretion in directing the issuance of this *mandamus.* It is not unreasonable to conclude that it is only by the use of extraordinary writ that this Association is going to be made to comply with its duty.

All assignments of error will be overruled. The decree of the Chancellor as to its jurisdiction, and in ordering the *mandamus,* is affirmed. The cause will be remanded for further proceedings. Costs of the appeal will be adjudged against the Association and its surety.