Coy E. Davis et al.

*v.*

Appalachian Electric Cooperative, Inc.

373 S. W. 2d 450

(*Knoxville,* September Term, 1962.)

Opinion filed November 6, 1963.

Petition for Rehearing Denied January 8, 1964.

Edward F. Hurd, Franklin Park, Newport, Clarence A. Bales, Jefferson City, for appellees.

Clyde W. Key, Key & Lee, Knoxville, J. D. Hale, Jefferson City, for appellant.

John C. Shofner, Allen Shoffner, Shelbyville, amicus curiae.

Mr. Justice White delivered the opinion of the Court.

A petition to rehear has been filed by the appellees in which we are asked to modify and clarify our opinion rendered heretofore.

We have now re-examined the averments in the original bill, as amended, the demurrer thereto, and the applicable law.

The case has been reargued at the bar of this Court and in consideration of all of these matters we do hereby withdraw our original opinion and substitute the following in place and instead thereof:

This case is one of first impression in this State. It involves the construction of the rights of the appellees

under and by virtue of Chapter 176 of the Public Acts of 1939, as now codified under T.C.A. 65-2501 et seq. There are approximately twenty-two states having comparative legislation upon their statute books. We have been cited no authority from any of these states, nor have we been able to find any which might be persuasive to us in reaching the proper decision herein.

Applying the general principles of law to the facts appearing in the pleadings, we arrive at the final conclusion herein announced.

The original bill, as amended, was filed by eleven members of the Appalachian Electric Cooperative, Inc. There are about fifteen thousand members. This cause is sought to be maintained as a class action by the said eleven members for the use and benefit of the entire membership of said co-operative.

The defendant filed a demurrer setting out four grounds, the second of which is:

"Because the bill fails to show that appellees, who are alleged to be shareholders or members of appellant, have, prior to the filing of the original bill in this cause, made application to the Trustees of Appalachian Electric Cooperative for the relief sought in this cause, and such application to said Trustees is a condition precedent to the maintenance of this suit."

The Chancellor overruled the demurrer, but allowed a discretionary appeal from such action to this Court. We find it necessary to discuss only the aforesaid ground of the demurrer.

The bill avers that the appellant was organized more than twenty years ago under and by virtue of the statutes

aforesaid for the purpose of supplying electric current or service to customers residing or doing business in Jefferson, Grainger, and the western half of Hamblen Counties.

The original bill avers, in part:

"Complainants say specifically that the filing of this suit is not intended as a reflection upon the character or integrity of the Trustees, or Managers of the defendant Appalachian Electric Cooperative, past or present. They, in many ways, have done an excellent management job. They have built a sound, efficient electric system reaching to every corner of the two counties served, and now provide service to 98% of all potential users, the others apparently not desiring service."

The bill is devoid of any charge that appellant or its Trustees have been guilty of mismanagement, fraud, corruption, or ultra vires acts in the conduct of the affairs of the co-operative. The basis upon which the cause proceeds is that the co-operative has not complied with its contract to refund to its membership annually the charges for electric current in excess of the amount necessary to comply with the requirements of T.C.A. 65-2516, and as required by the appellant's by-laws. It is averred in the bill, "whether this refusal is due to ignorance of the Charter and By-Laws requirements, or ignorance of the law governing cooperatives, or wilful, is unknown to complainants, and immaterial."

The bill states that the appellant has on hand $1,200,-000.00 in cash and liquid assets, of which some $800,000.00 to $1,000,000.00 is in excess of the reserves required by T.C.A. 65-2516, and it is averred that this Section of

the Code requires that such excess should be refunded to the members each year by one of three methods. It is stated in the bill that by virtue of the long and unfair delay in complying with said Section, that only one solution remains and that "a cash refund to all members of the amount of their yearly overcharge" should be made at this time.

The bill avers that the appellant is indebted to the Rural Electrification Administration (REA), in the sum of $1,999,000.00 on a long term construction loan, and that appellant has depreciated its physical plant to the extent of $1,300,000.00, and that said amount has been used for new construction, repairs, replacement, etc.

The prayer of the bill is that the excess over and above the amount reasonably necessary to be retained for working capital and reserves be refunded to the complaining eleven members and approximately fifteen thousand other present members, and, of course, those who have been members but now are no longer members, during the existence of the co-operative on a pro rata basis.

The bill avers that the co-operative should be allowed to retain $150,000.00 for operating capital, and $150,-000.00 for emergency reserve, or a total of $300,000.00, to make provision for the expenses of the co-operative as permitted in T.C.A. 65-2516.

It is a general rule of law in this State that before a minority stockholder or shareholder may maintain a suit to enforce his rights as such against the corporation and the majority in charge and in control of the corporation, he is required to show that his remedies permitted within the corporate structure have been ex-

hausted, or that such an attempt to exhaust said remedies would be a useless gesture. We have a number of decisions supporting this general statement.

The question then is whether or not there is an available avenue for the redress of the grievances of the appellees within the corporate structure which they have not attempted to utilize, or has it been shown that such attempt would be illusory because it was under the control of hostile interests.

■ If the shareholder has not exhausted his remedies within the corporation and has not shown that any attempt along such lines would be blocked by an oppressive majority, or be an idle gesture for some other reason, then he has not brought himself under the general exception of useless attempt and must be denied relief.

The case of *Range v. Tennessee Burley Tobacco Growers Association*, 41 Tenn. App. 667, 298 S.W.2d 545 (1955), is illustrative of the principles that govern the instant case. There it was sought to maintain a class action for the use and benefit of stockholders of the Association to enjoin waste and to recover for waste already committed and to recover the amounts realized by the Association from sales in excess of amounts borrowed from the Commodity Credit Corporation.

Judge McAmis, writing for the court, said:

"In the absence of fraud or corruption or ultra vires activities, not here shown, the intrusion of a court of equity into the internal affairs of a corporation is generally not warranted. The stockholders have their remedy within the corporation if it engages in activi-

ties or pursues policies deemed inimical to the interests of stockholders.

"The majority stockholders of a corporation have an undisputable right, in the absence of fraud, to manage the corporate affairs within the powers possessed by such corporation, and courts of equity will not, as a general rule, exercise jurisdiction at the instance of shareholders in a corporation to control or interfere in the management of the corporate or internal affairs of the corporation. They have no power to interpose their authority for the purpose of adjusting controversies that have arisen among the shareholders or directors of a corporation relative to the proper mode of conducting the corporate business as they may have in case of a similar controversy arising between the members of an ordinary partnership. Mere errors of judgment on the part of the officers or majority stockholders are not sufficient as grounds for the interference of equity at the instance of minority stockholders. The breach of duty by a corporation, authorizing equitable relief by a shareholder, does not refer to mere mismanagement or neglect of the officers or directors in the conduct of the corporate business."

The court ruled that since the complainants had not exhausted their remedies within the corporation they could not seek the aid of equity to enjoin the alleged waste. It also held that the relationship between the members and the Association was that of creditor and debtor, in relation to the funds withheld, because the Association was more an agent of the Government than a co-operative. The court ruled that the complainants, as individuals, were entitled to the funds pursuant to the

contract, but not as representatives of a class. They pointed out that the funds had been *allocated to the individuals in their names* on the Association's books and that as individuals each had a right to demand distribution and upon failure of the Association to act, a suit might be brought by the individual. (Emphasis supplied).

In fact, this occurred later and the chancellor's decree, on petition for mandamus by the individuals collectively, ordering the Association to distribute the funds was affirmed by this Court in an opinion written by Mr. Justice Tomlinson in *Neas v. Tennessee Burley Tobacco Growers' Association,* 204 Tenn. 405, 414-415, 321 S.W.2d 802, 806-807 (1959), in which we held that:

"[W]here a specific duty either in equity or by fair and reasonable construction on implication exists by reason of a statute in force and *there is no other adequate remedy* the writ of mandamus will be awarded.

\* \* \* \* \* \*

"*This was a ministerial duty, involving no discretion,* which the Association was bound to perform as the agent of the Commodity Credit Corporation. \* \* \* Where the duty of an officer or agent is ministerial, not involving discretion, but such officer refuses to perform that ministerial duty *and the right of the claimant is clear and not subject to a dispute* the performance of the duty of this agent or quasi trustee may be enforced by mandamus." (Emphasis supplied)

In the case of *Boyd v. Sims,* 87 Tenn. 771, 11 S.W. 948 (1889), which was a case commenced by minority stockholders of a corporation to correct certain evils complained against, the Court said that since the bill did not

allege any direct application to the officers or directors to correct the evils complained of, that the bill was not maintainable. This case held that before suit for redress of grievances will be entertained on behalf of stockholders against the corporation, its directors or officers, the stockholders must have exhausted all of the means within their reach to obtain redress within the corporation itself and must aver that fact. This general statement of the law is quoted by later decisions of *State v. Mitchell*, 104 Tenn. 336, 58 S.W. 365; *State v. Allstadt*, 166 Tenn. 349, 61 S.W.2d 473, 62 S.W.2d 566; and *Akin v. Mackie*, 203 Tenn. 113, 310 S.W.2d 164.

This latter case although supported the general view just expressed was distinguished by the facts appearing therein, which facts, although of a similar nature, are not present in the instant case.

In *Boyd v. Sims,* supra, the Court held:

"A corporation acts as a body. All stockholders in it submit the control of their interests to it as such through its trustees or directors. In the event its officers so use the powers conferred upon them as, in the judgment of stockholders, to injure the corporation, they can demand of the power which they have constituted to do so (the directors or trustees) to put a stop to the abuses complained of. This calls upon them to exercise the judgment they are expected to exercise to determine the propriety of the acts objected to. If they think the acts proper, and approve them, or refuse or fail to take any action, the stockholders, if a majority, may themselves take such action as is necessary to correct the abuses by a change of directors and officers or otherwise, including, of course,

an appeal to the courts; if a minority, by suit to compel the proper discharge of trusts and official duties. But it is clear that no stockholders should be permitted to interfere and control the management or frustrate the purposes of the corporation merely upon an allegation of the existence of a state of affairs contrary to their judgment of propriety, without any effort to have it changed in the mode indicated. Any other view would be destructive of the purposes for which corporations are formed, and of the principle of corporate action and management. It would make them hothouses of litigation, and leave the valuable franchises held by them at the mercy of the misjudgment, passion, or speculative propensities of individual stockholders. While the rule announced neither permits abuses in this or the opposite direction, it does not prevent suits for abuse of trust or mismanagement. It only requires that stockholders proceed in that lawful and orderly way for the correction of abuses within the corporation which they have engaged to do on becoming shareholders in it, which its existence and interest require they shall do,—to reform alleged abuses before involving the corporation and other shareholders therein in litigation; but it equally provides that when they have done this, and found themselves unable to obtain relief to which they are entitled, it will be given them by the courts.

"This rule is sound in reason and unquestioned in authority."

We are satisfied that this general statement continues to be the law in this State.

■ We are not here passing upon the merits of appellees' cause, we merely hold that the internal affairs

of the co-operative corporation, here, be settled internally before resorting to the courts for aid, unless, of course, such efforts would be repulsed by the directors and there is no such indication in this record.

It follows that we must reverse the action of the chancellor, sustain the demurrer, and dismiss the bill. In view of the disposition of this case we find it unnecessary to pass upon the motions made in this Court to amend the original bill and to allow fees for solicitors for appellees.

BURNETT, CHIEF JUSTICE, and DYER and HOLMES, JUSTICES, concur.

DYER, JUSTICE, concurs specially.

CLEMENT, SPECIAL JUSTICE, not participating.

DYER, JUSTICE (concurring).

I concur in the opinion prepared for the Court by my Brother White, but in addition to the reasons therein set out I set forth the following reasons which are, in my opinion, cogently logical and reasonable.

In the first place, the courts are not inclined to substitute their judgment for that of the management of the corporation, whether it be for profit or non-profit, when there is no charge of mismanagement, fraud or corruption.

It may be that the Trustees herein have failed to make refunds as required by T.C.A. 65-2516. If this be so, the appellees have their remedy under the statutes and by-laws which govern the appellant's operation. Our common law requires that appellees exhaust these and any

other remedies they may have before seeking the aid of the courts.

T.C.A. 65-2509 provides for the adoption of the original by-laws by the board of trustees and that thereafter the by-laws shall be adopted, amended or repealed by its members. This section requires that such by-laws shall set forth the rights and duties of members and trustees and may contain other provisions for the regulation and management of the affairs of the co-operative not inconsistent with this Chapter (176, Acts of 1939), or with its articles of incorporation.

T.C.A. 65-2514 provides for annual and special meetings of the members. Pursuant to the aforesaid authority, the by-laws of appellant provide that special meetings of the members may be called by the Board of Trustees, by any three Trustees, by the President, or upon a written request signed by at least ten per cent of all the members.

A quorum at such meeting shall consist of the presence in person of three per cent of all the members of the co-operative, or two hundred members, whichever is the lesser, for the transaction of the business of all meetings of the members, whether regular or special. By a majority vote at such meeting the appellees might direct the Trustees to act in accordance with their vote.

Under T.C.A. 65-2524 it is provided that members may embody any proposition in a petition signed by ten per cent of the members and present it to the trustees who are then required to hold a special meeting of the members at which said proposition may be presented for a vote of the members. The words "any proposition" may have been intended by the Legislature to refer only to

consolidation, merger, conversion, or the like. I find it unnecessary to construe the applicability or meaning of "any proposition" to the case here.

It is sufficient to say that the appellees have a remedy both under the statutes and under the by-laws of the appellant which they have failed to exhaust before seeking redress in the courts. The general common law rule set out in the opinion of my Brothers requires exhaustion of these remedies before suit.

Since the Act and the by-laws provide a procedure within the co-operative corporation for redress of grievances of its members and this remedy has not been exhausted, and the case does not come within the exception to the general rule requiring such prior action by the members, it follows that the action of the chancellor in overruling the demurrer must be reversed.

## On Petition to Rehear

While we respect and admire the earnestness of counsel, we find nothing in the petition to rehear which was not considered and ruled upon by us in our opinion of November 6, 1963. Therefore, the petition to rehear filed on December 4, 1963 is denied.