PER CURIAM.
Plaintiffs and appellants Larry C. Lay, et al., fifty-five members of appellee Bur-ley Stabilization Corporation (“BSC”) (“members”), are tobacco producers who sold burley tobacco through the federal price support program in one or more of the 1982 through 2004 crop years. They appeal the district court’s[1] dismissal of their case without prejudice, seeking funds allegedly wrongfully being withheld from them by BSC. The members contest the district court’s subject matter jurisdiction, contend that collateral estoppel does not bar the action, and argue that then claims do not implicate state statutory requirements for derivative actions. We determine that the necessary federal jurisdiction exists and affirm, ruling that collateral estoppel applies and that Tennessee law classifies the members’ claims as derivative.
*754 I. BACKGROUND
Appellee BSC, a non-profit agricultural cooperative association organized in 1953 under Tennessee law, delivered federal price support payments to growers of bur-ley tobacco within portions of Tennessee, North Carolina, and Virginia. Appellants, fifty-five members of BSC and tobacco producers, received federal price support on burley tobacco sold through the federal price support program in one or more of the 1982 through 2004 crop years. Members assert class claims on behalf of approximately 140,000 additional tobacco growers and BSC members, seeking disgorgement of funds that BSC allegedly owes them.
BSC worked through the Commodity Credit Corporation (“CCC”) and the United States Department of Agriculture (“USDA”) to administer the federal tobacco price support program within the congressional framework first created by the Agricultural Adjustment Act of 1938, which established a program of federal tobacco quotas and price supports aimed at stabilizing and increasing the prices paid to America’s tobacco growers. 7 U.S.C. §§ 1281 et seq.
In brief, the USDA annually set a support price level for various types of eligible tobacco. CCC then made loans to grower associations such as BSC, who used the loans to purchase eligible tobacco through various tobacco auctions at the support price when a grower could not obtain a higher price on the open market. CCC would take a security interest in the tobacco. BSC then processed and stored the tobacco, later attempting to resell it at a price sufficient to repay CCC and recover the processing and storage costs. If BSC realized more from the sale of a particular tobacco crop than necessary to repay CCC and recover its costs, the tobacco growers who produced that particular crop received the surplus, called “Net Gain.” If the proceeds from the sale of a particular crop were insufficient to repay the loans, however, CCC absorbed the loss at taxpayers’ expense and without recourse against either BSC or its individual grower-members. See Leaf Tobacco Exps. Ass’n, Inc. v. Block, 749 F.2d 1106, 1108-09 (4th Cir.1984) (describing the price support program); Strickland v. Flue-Cured Tobacco Coop. Stabilization Corp., 643 F.Supp. 310, 313 (D.S.C.1986) (same).
The No Net Cost Tobacco Program Act (“1982 Tobacco Act”) significantly amended the price support program. 7 U.S.C. §§ 1445-1, 1445-2, repealed by American Jobs Creation Act of 2004, Pub.L. 108-357, 118 Stat. 1523, codified at 6 U.S.C. § 612(a). The 1982 Tobacco Act intended to relieve taxpayers of the cost of the price support program by limiting federal tobacco expenditures to administrative costs. See Strickland, 643 F.Supp. at 313. The 1982 Act therefore required cooperative grower associations such as BSC to establish a “No Net Cost Account” with the CCC. CCC maintained and controlled these accounts, which provided recourse for CCC to ensure repayment of its loans. Therefore, if a cooperative grower association such as BSC realized more revenue from the sale of price support tobacco than necessary to satisfy the CCC loans related to the crop, then the CCC would retain the Net Gains to offset losses incurred on the 1982 and subsequent tobacco crops, thereby reducing the balance on other outstanding loans so that taxpayers would not need to fund the program. See 7 U.S.C. §§ 1445-1, 1445-2, repealed by American Jobs Creation Act of 2004, Pub.L. 108-357, 118 Stat. 1523, codified at 6 U.S.C. § 612(a).
With the Fan[1] and Equitable Tobacco Reform Act of 2004 (“FETRA”), Congress effectively terminated the tobacco price support program. Under FETRA, CCC *755 can dispose of certain collateral tobacco in a manner determined by the Secretary of Agriculture. See 7 U.S.C. § 519(b)-(c). FETRA directs CCC to apply receipts from any such tobacco sales, together with the funds in a cooperative association’s No Net Cost Account, toward any outstanding CCC loans. See id. Pursuant to FETRA, any funds remaining in the No Net Cost Account after CCC received full repayment were to be transferred to the cooperative for distribution to the “producers of quota tobacco in accordance with a plan approved by the Secretary.” See id. § 519(d).
Members filed this action on May 25, 2007 in the Knox County, Tennessee Chancery Court, laying claim to three specific pools of money: the proceeds BSC received when it sold the 1982 Pool Crop of tobacco, the proceeds BSC received when it sold tobacco from the 1983-2004 Pool Crops, and the proceeds BSC received or will receive when it sells the tobacco CCC released to it under FETRA. BSC removed the action to the district court.
On March 14, 2007, the district court entered an order dismissing members’ complaint against BSC without prejudice, classifying their claims as derivative and not in conformity with Tennessee statutory requirements for derivative actions. The district court also granted BSC’s motion to dismiss based on collateral estoppel, determining that the same class of people as members filed a similar suit against BSC and its directors and officers in the Knox County, Tennessee Circuit Court in February of 2005. Members timely appealed the present case, arguing that the district court lacked federal jurisdiction, improperly determined that collateral estoppel barred the action, and erred in dismissing the claims without prejudice.
II. ANALYSIS
This court reviews de novo subject matter jurisdiction, the district court’s dismissal of a complaint under Rule 12(b)(6), and collateral estoppel claims. Smith v. Nationwide Property and Cas. Ins. Co., 505 F.3d 401, 404 (6th Cir.2007); Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671 (6th Cir.2006); Wolfe v. Perry, 412 F.3d 707, 716 (6th Cir.2005).
Members argue that the federal courts lack jurisdiction on the basis that their claims do not rest on federal law. However, one of their claims expressly raises a federal question: members asserted in the pleadings that they were entitled to the proceeds from the sale of the loan pool tobacco “pursuant to FETRA.” Even if members had cast their claims as state law causes of action, however, federal jurisdiction exists where the cause presents a substantial question of federal law. See City of Chicago v. Int’l Coll. of Surgeons, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). As the district court noted, the 1982 Tobacco Act and FETRA created members’ claims, which require resolution of substantial issues under federal law. Members’ claims also charge that BSC served as an agent of a federal agency and that federal law governed its conduct in helping to administer the federal price support program. We therefore determine that federal subject matter jurisdiction exists in this case.
We consider next whether collateral es-toppel prevents members from bringing this lawsuit. Members cannot relitigate an issue when 1) the issue in subsequent litigation is identical to that resolved in the earlier litigation, 2) the issue was actually litigated and decided in the prior action, 3) the issue was necessary and essential to a judgment on the merits in the prior litigation, and 4) the party to be estopped was a *756 party to the prior action or in privity with the party. See Hickman v. Comm’r of Internal Revenue, 183 F.3d 535, 537 (6th Cir.1999).
Members argue that the first two elements preclude the application of collateral estoppel in this case. Specifically, they argue that the Knox County Circuit Court decided only that the “totality” of the case makes it derivative, without making any specific findings as to the individual claims. Furthermore, members point to the differences between the previous suit and this one as follows: 1) the prior action lacked a claim for declaratory relief with respect to the tobacco released to BSC under FE-TRA, and 2) BSC’s individual officers and directors no longer serve as defendants and no claim for breach of fiduciary duty exists.
These arguments lack merit. The Knox County Circuit Court already decided, and the district court agreed, that Tennessee law classifies members’ claims as derivative. Members could have appealed this result instead of collaterally attacking it. Furthermore, the issues in both rounds of litigation are identical and members’ added request for declaratory judgment relies on the same allegations underlying the other claims. Finally, members named BSC as a defendant in both suits, making the absence of BSC’s individual officers and directors in the subsequent litigation irrelevant. Even though members named individual officers in the original suit, however, they did not cast the original suit in the form of a derivative action so it could only have been against BSC. Thus, collateral estoppel applies.
But even if collateral estoppel did not apply, members’ pleadings of their1 claims failed to meet the statutory requirements for derivative suits. Tennessee state law determines whether plaintiffs’ claims are derivative or direct. McCarthy v. Middle Tenn. Elec. Membership Corp., 466 F.3d 399, 407-10 (6th Cir.2006). Here, members essentially claim that BSC mismanaged its assets and call for an accounting of the funds. Tennessee law has classified such claims as derivative in nature. See, e.g., id. at 407-410 (viewing proposed class claims for accounting and distribution of electric cooperative revenues as derivative); Davis v. Appalachian Elec. Co-op., Inc., 213 Tenn. 215, 373 S.W.2d 450, 453-54 (1963) (classifying members’ claims to recover electric cooperative funds as derivative); Range v. Tenn. Burley Tobacco Growers Ass’n, 41 Tenn.App. 667, 298 S.W.2d 545, 549 (1955) (noting that “stockholders [grower-members of defendant tobacco cooperative] have their remedy within the corporation”).
Members’ derivative claims must be brought pursuant to T.C.A. § 48-56-^401, which in part provides: “A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiffs could not obtain the action or why they did not make the demand.” Id. at § 48-56^401(c). Members have failed to comply with statutory requirements and therefore the district court properly dismissed them action without prejudice.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s judgment dismissing members’ action against BSC.

. The Honorable Thomas W. Phillips, United States District Court for the Eastern District of Tennessee.